JOHN ROD COGGINS, JR., BY JOHN ROD COGGINS, SR., HIS NEXT FRIEND, AND MARSHALL STEWART, JR., BY MARSHALL STEWART, SR., HIS NEXT FRIEND, v. THE BOARD OF EDUCATION OF THE CITY OF DURHAM, A CORPORATION.

(Filed 12 January, 1944.)

**1. Schools §§ 3, 6—**

The establishment and operation of the public school system is under the control of the legislative branch of the government, subject only to the pertinent constitutional provisions as to uniformity, sec. 2, Art. IX, and length of term, sec. 3, Art. IX.

**2. Schools §§ 6, 7, 8, 27—**

The Legislature may delegate to the local school administrative units the power to make such rules and regulations as may be deemed necessary or expedient, and when so delegated it is peculiarly within the province of the administrative officers of the local unit to determine what things are detrimental to the successful management, good order, and discipline of the schools in their charge and the rules required to produce those conditions.

**3. Schools §§ 7, 8—**

It is generally held that local school authorities have the inherent power to make rules and regulations for the discipline, government, and management of the schools and pupils within their district. With us there is ample statutory authority. G. S., ch. 115.

**4. Same—**

The findings and conclusions of the local school board, fixing rules and regulations for the government of the schools, are conclusive, unless the board acts corruptly, in bad faith, or in clear abuse of its powers. The court will interfere only when necessary to prevent such action.

**5. Same: Constitutional Law § 12—**

Membership in secret societies is subject to regulation by school boards and in adopting rules requiring every student to sign a pledge that he is not a member of such organization, will not become a member or support any such society, the penalty for refusal to sign being a denial of the right to participate in extracurricular activities, a school board acts within its authority, where the rules make no attempt to deny those not

signing any instruction afforded by class work or by the required curriculum of the school.

APPEAL by plaintiffs from *Grady, Emergency Judge,* at October Term, 1943, of DURHAM. Affirmed.

Civil action to restrain the enforcement of a rule or resolution adopted by the defendant board relating to conduct of pupils in the public schools of the City of Durham, heard on demurrer.

The action was instituted by plaintiff John Rod Coggins, Jr., and complaint was filed in his behalf. Thereafter, plaintiff Marshall Stewart, Jr., appeared and had himself made party plaintiff, but he filed no pleadings.

The facts as alleged in the complaint are:

The defendant is the governing board of the City of Durham School District. The original plaintiff is a resident of said school district, is a student duly enrolled in the Senior High School under the jurisdiction of the defendant, and intends to enroll and continue his studies during the school year 1943-1944.

On 6 April, 1943, the defendant board adopted a resolution relating to membership of pupils in secret societies and fraternities, to become effective at the opening of the Fall Term, 1943. The resolution, together with a foreword, a copy of the required pledge, and "note to parents," was mailed to the parents residing within said district, including the parents of the plaintiff, as follows:

## "FOREWORD

"(By order of the Board of Education of the City of Durham to become effective with the opening of the school year 1943-1944)

"In May, 1941 the Board of Education published resolutions making known its disapproval of membership among high school pupils in fraternities and sororities and appealing for co-operation of both pupils and parents. This action was taken after thoughtful consideration, and it was hoped and believed that all parties interested in the welfare of the school would accede to the request of the Board and that in a reasonable time the problem would be solved. Unfortunately no such result has been attained. On the contrary, the situation has become worse rather than better and as a result many complaints have been heard.

"In consequence of its own investigation and by reason of the urgent requests of large numbers of parents and public-spirited citizens, the Board is now convinced that more effective measures must be adopted in an effort to eradicate from our schools influences that are harmful to the existence and promotion of real democratic ideals and proper social behavior.. The Board cannot feel that it has been true to its responsibilities unless it endeavors to guard in every reasonable and legitimate

way against false conceptions of superiority and the setting up of arti-ficial social distinctions.

"The Board has, therefore, worked out a plan designed to eliminate school pupil membership in secret organizations. It is believed that this plan when understood and made effective will have the full approval of the great majority of parents and pupils and will bring about a much more desirable condition in the Junior and Senior High Schools. Under this plan new regulations governing participation in school activities will become operative at the beginning of the school year 1943-1944.

## "STUDENT ACTIVITY PLEDGE:

(Here appears a declaration that the signor is not a member or "pledge" of any fraternity or society not approved by the school board; that he will not join any such society or attend the meetings of same or any function sponsored by it; and that he will not contribute funds to or participate in any of the activities of any such organization.)

## "NOTE TO PARENTS:

"Failure to sign this pledge will prevent your child from taking part in school activities. A suggestive list of activities (and the list of activities is not at all exhaustive) from which members of fraternities or sororities, or unapproved clubs, and students who fail to sign this pledge are barred, is given on the reverse side of this form.

"Holding any office of Student Body, Homeroom Class or Club.

"Taking part in all intra-mural and inter-scholastic activities or con-tests, both Athletic and Literary.

"Representing the school or class or any organization in any capacity.

"Serving as Editors or Managers of any school publications, or writing articles therefor.

"Taking part in the Senior play or other dramatic activities.

"Participating in Assembly or Homeroom programs.

"Serving as Cafeteria or Library helper.

"Attending High School dances or socials.

"Serving as Monitors in any capacity.

"Becoming a member of any school-sponsored club, society, or organi-zation.

"Representing the school in Student Government activities.

"I. The specific requirements for a school club or organization to be approved by the Principal are, as follows:

(There is here listed requirements, 8 in number, not material to the decision of this case.)

"II. That a uniform procedure be followed in all schools, the out-standing points of which shall be as follows:

"1. Principals shall explain fully to their faculty members the Board's policy toward secret organizations and enlist their active co-operation in combatting them. At the beginning of the first semester of the session 1943-1944, pledge forms shall be distributed by the Principal to those in charge of homeroom groups in Junior and Senior High Schools who will give the pupils an opportunity to sign the pledge, and shall report to the Principal those who fail to sign. New students enrolling in the schools will be given an opportunity to sign pledges at the time they enter.

"2. Pupils who do not sign the pledge shall be interviewed by the Principal to ascertain why they failed to sign, and to make sure that such pupils understand the regulations of the Board of Education governing eligibility of pupils for participation in school activities, as listed. A list of all pupils signing the pledge and therefore eligible for participation in all school activities shall be furnished to all teachers in the school. Pupils not on this list shall not be eligible to participate in any of the enumerated school activities.

"3. The parents of pupils who refuse to sign shall be interviewed by the Principal with a view to securing their co-operation.

"III. Principals and teachers shall exercise all diligence to see that pupils loyally observe their pledges. If a pupil has deliberately violated the pledge, or misrepresented his status in signing the pledge, he shall be disciplined by suspension from school. An agreement, satisfactory to the school authorities, as to the pupil's future relation with any secret organization must be reached before he may return to school."

The plaintiff is a member of Phi Kappa Delta fraternity, which fraternity comes within the condemnation of the resolution adopted. At the time of the institution of this action plaintiff had not signed the required pledge, and is reluctant to do so.

It is further alleged that the defendant threatens to deprive plaintiff of the right to become a member of the high school football team and to deny him all other extracurricular privileges and advantages guaranteed by the public school laws of the State unless he signs said pledge.

Temporary restraining order was issued. When the rule to show cause came on to be heard the defendant demurred "for that the complaint does not state facts sufficient to constitute a cause of action." The court below entered judgment sustaining the demurrer and dismissing the action. Plaintiffs excepted and appealed.

S. C. Chambers for plaintiffs, appellants.
Fuller, Reade, Umstead & Fuller for defendant, appellee.

BARNHILL, J. The State provides free educational facilities for the children of the State, and each child has a right to attend the schools of·

his district. But this is not an absolute right. Schools to be effective and fulfill the purposes for which they are intended must be operated in an orderly manner. Machinery to that end must be 'provided. Reasonable rules and regulations must be adopted. The right to attend school and claim the benefits afforded by the public school system is the right to attend subject to all lawful rules and regulations prescribed for the government thereof. This is all the plaintiff may claim. 24 R. C. L., 621.

The establishment and operation of the public school system is under the control of the legislative branch of the government, subject only to pertinent constitutional provisions as to uniformity, sec. 2, Art. IX, and length of term, sec. 3, Art. IX. *Wilkinson v. Board of Education,* 199 N. C., 669, 155 S. E., 562. It may delegate to local administrative units the power to make such rules and regulations as may be deemed necessary or expedient, and when so delegated it is peculiarly within the province of the adminisrative officers of the local unit to determine what things are detrimental to the successful management, good order, and discipline of the schools in their charge and the rules required to produce those conditions. 24 R. C. L., 576.

It is generally held that local school authorities have the inherent power to make rules and regulations for the discipline, government, and management of the schools and pupils within their district. 24 R. C. L., 574. With us there is ample statutory authority.

The school law of the State was revised, codified, and re-enacted in 1923. Ch. 136, Public Laws 1923. This Act, as amended, provides the machinery for the operation of our public school system. See ch. 394, Public Laws 1937, and ch. 358, Public Laws 1939. See also G. S., ch. 115, for recodification.

Each County Board of Education is vested with authority to fix and determine the method of conducting the public schools in its county so as to furnish the most advantageous method of education available to the children attending its public schools. Sec. 31. It may: (1) fix the time of opening and closing schools, sec. 32; (2) determine the length of the school day, sec. 33; (3) enforce the compulsory school law, sec. 34; (4) provide for the teaching of certain subjects in elementary schools, sec. 39; (5) determine the necessity for kindergartens, sec. 40; (6) provide for a training school for each race, sec. 41; (7) make rules and regulations not in conflict with State law for the guidance of the County Superintendent as the enforcement officer, sec. 47; (8) make all just and needful rules and regulations governing the conduct of teachers, principals, and supervisors, sec. 53; (9) provide for the training of teachers, sec. 54. In addition it is given general control and supervision over all matters pertaining to the public schools within its county, sec. 30, and

all powers and duties conferred and imposed by law respecting public schools, which are not expressly conferred and imposed upon some other officials, are conferred and imposed upon the county board of education. Sec. 29.

What, then, is the present status and authority of the defendant board?

Prior to 1933 it derived its authority from the Act creating the town of Durham public school district, a special charter district, ch. 86, Public Laws 1887. But in 1933 the Legislature adopted a new system of local unit organization of the public schools of the State. Ch. 562, Public Laws 1933. It abolished all special tax and special charter districts and directed the State School Commission to classify each county as an administrative unit, to be divided into convenient school districts. It was further provided that any newly constituted district having a school population of 1,000 or more for the school year 1932-33 in which a special charter school was then being operated should be classified as a city administrative unit, to be dealt with by the State school authorities in all matters of school administration as a county administrative unit. Sec. 4. Admittedly, this provision included the "Durham public school district," which has since operated as a city administrative unit.

- The trustees of a special charter district and their successors, by whatever name known, are retained as the governing body of such district. Sec. 4. (See also sec. 5, ch. 455, Public Laws 1935, sec. 5, ch. 394, Public Laws 1937, and sec. 5, ch. 358, Public Laws 1939.) And the general administration and supervision of their district is committed to their care. G. S., 115-8.

Thus the City of Durham unit, for the purposes of administration, is a county unit, and its trustees are vested with all the power and authority within their district conferred, upon the county boards of education. This includes the power to make, promulgate, and enforce such rules and regulations as they, in their discretion, deem reasonably necessary for the good management of the schools and the discipline of its pupils. Only thus may they fully exercise the "general control and supervision over all matters pertaining to" the schools committed to their care.

After investigation and thoughtful consideration the defendant board concluded that membership in secret societies known as Greek letter fraternities and sororities was detrimental to the best interests of the schools. They first sought to remedy the condition through the voluntary co-operation of parents. Failing in this and being convinced that "more effective measures" were essential to eradicate from the schools "influences that are harmful to the existence and promotion of real democratic ideals and proper social behavior" and to guard against "false conceptions of superiority and the setting up of artificial social distinctions," it adopted the rule set out in the complaint as Exhibit I.

The rule makes no attempt to deny plaintiff any instruction afforded by class work or by the required curriculum of the school. Nor is he denied the right to participate in extracurricular activities. It is merely made optional with him to determine whether, against the known wishes of the school authorities, he prefers to continue his membership in a secret society and thereby forfeit participation in the privileges afforded by the extracurricular activities of the schools, which, by compliance with the rule, would be available to him. He has now arrived at one of the crossroads of life. He must decide which course he will take, and the choice is his.

Ordinarily, complaints of disaffected pupils of the public schools against rules and regulations promulgated by school boards for the government of the schools raise questions essentially political in nature, and the remedy, if any, is at the ballot box. But the unreasonableness of such a rule is a judicial question, and the courts have the right of review. They will not hesitate to intervene in proper cases. In doing so, however, it will be kept in mind that the local board is the final authority so long as it acts in good faith and refrains from adopting regulations which are clearly arbitrary or unreasonable. It will be remembered also that respect for constituted authority and obedience thereto is an essential lesson to qualify one for the duties of citizenship and that the school is an appropriate place to teach that lesson.

If the opinion of court or jury is to be substituted for the judgment and discretion of the board at the will of a disaffected pupil, the government of our schools will be seriously impaired, and the position of school boards in dealing with such cases will be most precarious. The Court, therefore, will not consider whether such rules and regulations are wise or expedient. Nor will it interfere with the exercise of the sound discretion of school trustees in matters confided by law to their discretion.

The findings and conclusion of the local board are conclusive unless it acts corruptly, in bad faith, or in clear abuse of its powers. *Finch v. Fractional School District*, 196 N. W., 532; *State ex rel. Dresser v. District Board*, 135 Wisc., 619, 116 N. W., 232; *Tanton v. McKenney*, 33 A. L. R., 1175. The Court will intervene only when necessary to prevent such action. *Pue v. Hood, Comr. of Banks*, 222 N. C., 310; *Belk's Department Store, Inc., v. Guilford County*, 222 N. C., 441; 47 Am. Jur., 325, 422; 24 R. C. L., 575; *McLeod v. State ex rel. Miles*, 63 A. L. R., 1161; *Pugsley v. Sellmyer*, 30 A. L. R., 1212; *Tanton v. McKenney, supra; Christian v. Jones*, 32 A. L. R., 1340; *Wilson v. Board of Education*, 233 Ill., 464, 15 L. R. A. (N.S.), 1136, 84 N. E., 697, 13 Ann. Cas., 330.

Membership in secret societies is subject to regulation by the board, and in adopting the rule here challenged the defendant acted within the

authority vested in it by law. 24 R. C. L., 629, 56 C. J., sec. 1097 (d), p. 885, 47 Am. Jur., 423; *Wayland v. Board of School Directors,* 43 Wash., 441, 7 L. R. A. (N. S.), 352, 86 Pac., 642; *Wilson v. Board of Education, supra; Favorite v. Board of Education,* 235 Ill., 314, 85 N. E., 402; *University of Michigan v. Waugh,* 105 Miss., 623, L. R. A. (N. S.), 1915-D, 588; *Lee v. Hoffman,* 166 N. W., 565, L. R. A., 1918-C, 933. See also *Graham v. Jones,* 32 A. L. R., 1340; *Pugsley v. Sellmyer, supra; Tanton v. McKenney, supra; McLeod v. State ex rel. Miles, supra; Antell v. Stokes,* 191 N. E., 407 (Mass.); Anno. 134 A. L. R., 1274. It is not unreasonable, and it does not constitute an unlawful discrimination against plaintiff.

Nor does it deprive plaintiff of any right guaranteed by the Fourteenth Amendment to the Federal Constitution. *Waugh v. Board of Trustees,* 237 U. S., 589, 59 L. Ed., 1131.

Plaintiff relies in part on sec. 240, ch. 136, Public Laws 1923. Our conclusion here is not in conflict with the provisions of that section. Persons of school age are entitled to all the privileges and advantages of the public schools of the district in which they reside. Section 240 defines who are "residents" within the meaning of this provision.

The complaint fails to state a cause of action. Certainly no irreparable damage is threatened requiring injunctive relief. It follows that the judgment sustaining the demurrer must be

Affirmed.