JUNIOR JERNIGAN, PETITIONER v. STATE OF NORTH CAROLINA, RESPONDENT

No. 39

(Filed 10 November 1971)

1. Criminal Law § 181— post conviction relief — authority of Paroles Board — reinstatement of parolee's sentence to run at completion of new sentence

    A prisoner who is currently serving a valid sentence for a crime committed during his parole may not use the Post Conviction Act to challenge an order of the Board of Paroles providing that the remainder of the sentence upon which the parole was revoked shall be served at the completion of the sentence for the crime committed during the parole, the question not arising out of the proceeding which resulted in his conviction. G.S. 15-217; G.S. 15-217.1; G.S. 148-62.

2. Habeas Corpus § 2— right to habeas corpus hearing — prisoner serving valid sentence — challenge to Paroles Board's authority to reinstate old sentence

    A prisoner who is currently serving a valid sentence for a crime committed during his parole may not avail himself of the writ of habeas corpus to challenge an order of the Board of Paroles providing that the remainder of the sentence upon which the parole was revoked shall be served at the completion of the sentence for the crime committed during the parole.

3. Habeas Corpus § 2— writ of habeas corpus — prisoner's right to be released at future date

    The writ of habeas corpus is not available to test a prisoner's right to be released at some future time.

4. Administrative Law § 3— review of Paroles Board order — inapplicability of administrative review statutes

    The provisions for Judicial Review of Decisions of Certain Administrative Agencies are inappropriate to challenge the constitutionality of a statute authorizing the Board of Paroles to reinstate a parolee's sentence so as to run at the expiration of the sentence currently being served by the parolee. G.S. 143-306 through G.S. 143-316.

5. Declaratory Judgment Act § 1; Criminal Law § 145.5— declaratory judgment — review of Paroles Board order

    The Declaratory Judgment Act is an appropriate means whereby a prisoner who is currently serving a valid sentence for a crime com-

Jernigan v. State

mitted during his parole may challenge an order of the Board of Paroles providing that the remainder of the sentence upon which the parole was revoked shall be served at the completion of the sentence for the crime committed during the parole. G.S. 1-253 through G.S. 1-267; G.S. 148-62.

**6. Declaratory Judgment Act § 1— declaratory judgment — civil remedy**

A declaratory judgment is a civil remedy which may not be resorted to to try ordinary matters of guilt or innocence.

**7. Declaratory Judgment Act § 1— declaratory judgment relief — penal matters**

The courts do not lack power to grant a declaratory judgment merely because a questioned statute relates to penal matters.

**8. Criminal Law § 145.5; Constitutional Law §§ 5, 9— reinstatement of parolee's original sentence — authority of Paroles Board to impose consecutive sentence — separation of powers**

The statute which empowers the Board of Paroles to order that the remainder of a parolee's sentence upon which his parole was revoked shall be served at the completion of the sentence imposed for a crime committed during the parole, *held* constitutional; there is no merit to a defendant's contention that the statute failed to provide adequate guidelines for the Board of Paroles or that it violates the separation of powers clause of the State Constitution. G.S. 148-60; G.S. 148-62; N. C. Constitution, Art. I, §§ 6, 19 (1970) and Art. IV, § 1 (1970).

ON *certiorari* to review the decision of the Court of Appeals (reported in 10 N.C. App. 562, 179 S.E. 2d 788) affirming the judgment of *Canaday, J.,* entered at the 22 June 1970 Criminal Session of DURHAM.

Proceeding instituted by Junior Jernigan, a person imprisoned in the penitentiary. Petitioner, purporting to act under the Post Conviction Hearing Act (G.S. 15-217 through G.S. 15-222), petitioned the Superior Court of Durham County to reverse an order of the Board of Paroles directing that the sentences under which he is presently confined in the State Prison System be served consecutively.

The facts are not in dispute. In 1959 and 1960 petitioner was convicted of various felonies and received prison sentences totaling over fifteen years. He was paroled 5 October 1966 and was on parole on 11 March 1967.

At the April 1967 Criminal Session of Durham, petitioner was convicted of larceny from the person, which allegedly occurred on 11 March 1967. On 6 April 1967, the presiding judge,

the Honorable Leo Carr, sentenced petitioner to a term of ten years. The judgment made no reference to his prior sentences and, on 7 April 1967, petitioner was committed to Central Prison to begin serving the ten-year sentence.

On 10 April 1967, under the authority of G.S. 148-61.1, the Board of Paroles revoked petitioner's parole of 5 October 1966, and, under G.S. 148-62, directed that he serve the remainder of the sentences upon which his parole had been revoked after the completion of the ten-year-sentence imposed by Judge Carr on 6 April 1967.

In June 1970 petitioner, *in propria persona,* instituted this proceeding by filing a petition in which he sought, *inter alia,* to present the question whether his ten-year-sentence for the offense of larceny from the person should run concurrently with the remainder of the sentences upon which his parole had been revoked. Upon his application for counsel Judge Canaday adjudged him to be an indigent and appointed Mr. James B. Craven III, attorney-at-law, to represent him.

At the hearing before Judge Canaday on 26 June 1970 petitioner stipulated that he was not asserting any error or denial of constitutional rights in the trials which resulted in the sentences against him; that the only issue he raises is whether the sentence imposed by Judge Carr should run concurrently with the unserved portions of the sentences upon which parole had been revoked. Petitioner attacked the validity of G.S. 148-62 and argued that the Board of Paroles lacked authority to order the sentences served consecutively. Judge Canaday ruled the statute valid and "explicit" in this case. He denied petitioner "any relief in this situation" and ordered him returned to the custody of the Department of Correction.

The Court of Appeals granted petitioner's application for certiorari. It held that G.S. 148-62 did not contravene the Constitution of North Carolina and affirmed Judge Canaday's judgment. We allowed certiorari.

*Attorney General Morgan; Staff Attorney Eatman for the State.*

*James B. Craven III for plaintiff appellant.*

SHARP, Justice.

[1] The first problem presented by this appeal is whether the question which petitioner raises is justiciable under the Post Conviction Act. The answer is No. The Act authorizes any prisoner serving a sentence in the State Prison System to institute a proceeding in the Superior Court of the county of his conviction to challenge the validity of his incarceration upon the following grounds: (1) that *in the proceeding which resulted in his conviction* there was a substantial denial of his rights under the Constitution of the United States or of the State of North Carolina; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence exceeds the maximum authorized by law; or (4) that the sentence is subject to collateral attack upon any ground heretofore available under any common law or statutory remedy as to which there has been no prior adjudication. G.S. 15-217 and G.S. 15-217.1.

Petitioner concedes the validity of his trial and the sentences under which he is now being held. His only attack is upon the subsequent order of the Board of Paroles relating to the administration or order in which the sentences are to be served. The Post Conviction Hearing Act may not be used for this purpose. How then should petitioner have proceeded?

[2, 3] Petitioner could not have proceeded by petition for a writ of habeas corpus because he is not now illegally imprisoned. Presently he is serving a valid ten-year-sentence, begun 7 April 1967. Under our decisions the sole question for determination in a habeas corpus proceeding is whether the petitioner is *then* being unlawfully imprisoned. The writ is not available to test a prisoner's right to be released at some future time. *State v. Lewis,* 274 N.C. 438, 164 S.E. 2d 177; *In re Burton,* 257 N.C. 534, 126 S.E. 2d 581; *In re Renfrow,* 247 N.C. 55, 100 S.E. 2d 315; *In re Swink,* 243 N.C. 86, 89 S.E. 2d 792. *Cf. State v. Clendon,* 249 N.C. 44, 105 S.E. 2d 93; *State v. Austin,* 241 N.C. 548, 85 S.E. 2d 924. *Contra Peyton v. Rowe,* 391 U.S. 54, 20 L. ed. 2d 426, 88 S.Ct. 1549 (1967)—construing 28 U.S.C. § 2241 (c) (3) (1970), a section of the federal habeas corpus statutes.

[4] The provisions for Judicial Review of Decisions of Certain Administrative Agencies (G.S. 143-306 through G.S. 143-316) were likewise inappropriate to initiate an attack upon the con-

stitutionality of a statute fixing the powers and duties of the Board of Paroles. If ever applicable to an order of the Board of Paroles, these provisions were not designed for this particular purpose. "The question of the constitutionality of a statute is not for administrative boards but for the judicial branch." *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 173, 118 S.E. 2d 792, 796.

[5] G.S. 148-62 has not heretofore been considered by this Court. Since the question of its constitutionality is a matter of importance both to the public and to prisoners, it is one which should be answered authoritatively. We therefore treat this proceeding as one instituted under the Declaratory Judgment Act. For the reasons hereinafter set out we deem this Act to provide an appropriate means of deciding this case.

The Declaratory Judgment Act (G.S. 1-253 through G.S. 1-267) provides that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." G.S. 1-254. To that end the courts of record are "empowered to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." G.S. 1-253.

[6] A declaratory judgment is a civil remedy which may not be resorted to to try ordinary matters of guilt or innocence. It will not be granted when its only effect is to determine questions which properly should be decided in a criminal action. 22 Am. Jur. 2d *Declaratory Judgments* § 28 (1965); Annot., *Declaratory Relief—Criminal Statutes,* 10 A.L.R. 3d 727 (1966). For instance, one charged with the violation of a statute is not entitled to a declaratory judgment adjudicating its constitutionality, a matter which can be authoritatively settled in the criminal action. *Spence v. Cole,* 137 F. 2d 71 (4th Cir. 1943). *See Chadwick v. Salter,* 254 N.C. 389, 119 S.E. 2d 158; 26 C.J.S. *Declaratory Judgments* § 33 (1956). "The rationale seems to be that if the facts upon which the propriety of a criminal prosecution are in dispute, the dispute ought to be resolved by the triers of the facts in a criminal prosecution in accordance with the rules governing criminal cases. . . . This reasoning, however, is inapplicable if the crucial question is one of law, since the question of law will be decided by the court in any event and

Jernigan v. State

not by the triers of the facts." *Bunis v. Conway,* 234 N.Y.S. 2d 435, 437, 17 App. Div. 2d 207. *See* 22 Am. Jur. 2d *Declaratory Judgments* § 24 (1965) ; Annot., 10 A.L.R. 3d 733 (1966).

G.S. 148-62 is not a criminal law in the sense that it defines or prohibits a specific crime and imposes a penalty for its commission. It relates to the administration by the Board of Paroles of a prisoner's several *criminal* sentences after his parole has been revoked upon conviction of a new crime. The constitutionality of the statute is a pure question of law; no disputed facts are involved.

[7] The courts do not lack power to grant a declaratory judgment merely because a questioned statute relates to penal matters. When a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights. *Calcutt v. McGeachy,* 213 N.C. 1, 195 S.E. 49; *Bryarly v. State,* 232 Ind. 47, 111 N.E. 2d 277 (1953), and cases therein cited. In *Calcutt* this Court held that a declaratory judgment was available to test the constitutionality of the statute making the possession of certain slot machines illegal and authorizing their confiscation. The decision upheld the statute.

In *Vanilla v. Moran,* 67 N.Y.S. 2d 833, *aff'd* 272 App. Div. 859, 70 N.Y.S. 2d 631, *appeal denied* 272 App. Div. 971, 72 N.Y.S. 2d 420, *app. dismd.* 297 N.Y. 593, 75 N.E. 2d 265, *aff'd* 298 N.Y. 796, 83 N.E. 2d 696 (1949), the plaintiff, whose sentence had been commuted, brought an action against the governor of the State of New York and its Board of Paroles for a judgment declaring that he was no longer subject to the Board's jurisdiction. The court in holding that plaintiff was entitled to the declaratory judgment emphasized that (1) only a question of law was involved; (2) a determination of the question would serve a practical end by defining an uncertain or disputed jural relationship; (3) the plaintiff had no other adequate legal remedy. After having approved the procedure the court rendered judgment against the plaintiff on the merits. A similar result was reached in *Koyce v. United States Board of Parole,* 306 F. 2d 759 (D.C. Cir. 1962), a case in which the plaintiff sought a declaratory judgment that parole conditions could not be applied to him because he had been convicted by court martial.

It is the rule in this jurisdiction that "[a]n Act will be declared unconstitutional and its enforcement will be enjoined when it clearly appears either that property or fundamental human rights are denied in violation of constitutional guarantees." *Roller v. Allen,* 245 N.C. 516, 518, 96 S.E. 2d 851, 854. This may be done in a properly constituted action under the Declaratory Judgment Act when a specific provision of a statute is challenged by a person directly and adversely affected thereby. *Greensboro v. Wall,* 247 N.C. 516, 101 S.E. 2d 413. This case presents such a challenge.

If the statute is unconstitutional, petitioner will be entitled to his release from prison at the conclusion of the ten-year-sentence he is now serving. If the statute is constitutional, at the completion of his present sentence he will begin the unserved portions of the previous sentences from which he was paroled. Fundamental rights are involved. Petitioner is entitled to know what effect the statute has upon his future.

Having determined the route to decision, we now consider the constitutionality of G.S. 148-62. It reads as follows:

"If any parolee, while being at large upon parole, shall commit a new or fresh crime, and shall enter a plea of guilty or be convicted thereof in any court of record, then, in that event, his parole may be revoked according to the discretion of the Board of Paroles and at such time as the Board of Paroles may think proper. If such parolee, while being at large upon parole, shall commit a new or fresh crime and shall have his parole revoked, as provided above, he shall be subject, in the discretion of the Board of Paroles, to serve the remainder of the first or original sentence upon which his parole was granted, after the completion or termination of the sentence for said new or fresh crime. Said remainder of the original sentence shall commence from the termination of his liability upon said sentence for said new or fresh crime. The Board of Paroles, however, may, in its discretion, direct that said remainder of the original sentence shall be served concurrently with said second sentence for said new or fresh crime."

[8] Petitioner concedes the validity of that portion of G.S. 148-62 which authorizes the Board of Paroles to revoke the parole of a parolee who "shall commit a new or fresh crime and shall enter a plea of guilty or be convicted thereof in any court of

record." He challenges only the provisions of the statute which empower the Board to direct that a returned prisoner shall serve the remainder of any sentence upon which his parole was revoked *after* the completion of the sentence for the new crime.

In *In re Parker,* 225 N.C. 369, 372, 35 S.E. 2d 169, 171, this Court said: *"In the absence of a statute to the contrary,* and unless it sufficiently appears otherwise in the sentence itself, it is generally presumed that sentences imposed in the same jurisdiction, to be served at the same place or prison, run concurrently, although imposed at different times and by different courts and upon a person already serving a sentence." (Emphasis added.)

Relying upon *In re Parker,* petitioner asserts that "there is a clear conflict between the case law of the Supreme Court . . . and the statute relied on by the Board of Paroles, G.S. 148-62." He argues that the statute is unconstitutional because (1) it grants judicial power to the Board of Paroles in contravention of N. C. Const., Art. IV § 1 (1970) and contravenes the separation of powers clause, N. C. Const., Art. I § 6 (1970) ; and (2) it provides no standards to guide the Board of Paroles in the exercise of the discretionary power granted it and thereby deprives petitioner of his liberty other than by the law of the land, a violation of N. C. Const., Art. I § 19 (1970).

In a lucid and closely reasoned opinion by Judge Parker, the Court of Appeals rejected petitioner's contentions and upheld the constitutionality of G.S. 148-62. We adopt the rationale of that opinion which is supported by convincing authority. *Zerbst v. Kidwell,* 304 U.S. 359, 58 S.Ct. 872, 82 L. Ed. 1399 (1937) ; *State v. Fazzano,* 96 R.I. 472, 194 A. 2d 680 (1963), and cases therein cited. *See* 59 Am. Jur. 2d *Pardon and Parole,* §§ 79, 83 (1971).

This State is firmly committed to the doctrine that "[t]he legislative, executive, and supreme judicial powers of the State Government shall be forever separate and distinct from each other." N. C. Const., Art. I, § 6 (1970). However, " 'the classification cannot be very exact, and there are many officers whose duties cannot be exclusively arranged under the duties of either of these heads.' Cooley on Torts, p. 375 . . . The functions of the court in regard to the punishment of crimes are to determine the guilt or innocence of the accused, and, if that determination

be one of guilt, then to pronounce the punishment or penalty prescribed by law. The execution of the sentence belongs to a different department of the government. The manner of executing the sentence and the mitigation of punishment are determined by the legislative department, and what the Legislature has determined in that regard must be put in force and effect by administrative officers." *People v. Joyce,* 246 Ill. 124, 135, 92 N.E. 607, 612.

In the division of governmental authority the "legislature has exclusive power to determine the penalogical system of the [State]. It alone can prescribe the punishment for crime. . . . It may therefore establish a parole system. . . . The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be intrusted by the legislature to non-judicial agencies." *Commonwealth ex rel Banks v. Cain,* 345 Pa. 581, 587, 28 A. 2d 897, 900-1 (1942), 143 A.L.R. 1473, 1476-1477 (1943).

When Judge Carr sentenced petitioner, then a parolee, he performed a judicial act by fixing his punishment within the limits prescribed by the legislature. The legislature may also prescribe the order in which multiple sentences are to be served. This it has done with reference to sentences imposed for escapes from the prison system, G.S. 148-45, and it has given the Board of Paroles the option of so doing when it revokes a parole under G.S. 148-62. When Judge Carr sentenced petitioner his parole had not been revoked. Whether it would thereafter be revoked because of petitioner's new crime was a matter committed to the discretion of the Board of Paroles under G.S. 148-62, the provisions of which are annexed to every parole. *Cf. State v. Yates,* 183 N.C. 753, 111 S.E. 337. These provisions do not infringe upon the authority of the judiciary.

In *State v. Fazzano, supra,* a case involving a situation identical with this one, the Supreme Court of Rhode Island considered a statute giving the Board of Paroles power to determine whether a parole violator should serve concurrent or consecutive sentences. In upholding the validity of the statute, the court said:

"Not only is it within the power of the legislature to provide that one who violates his parole must serve the balance of the original term and the term imposed for the violation consecutively, but it is also clearly within its power to provide

that the balance of the original term shall be served only if a parole board in its sole discretion revokes the conditional release or parole given to the offender. A person imprisoned by a court is turned over to an administrative agency for the execution of the sentence." *Id.* at 96, 194 A. 2d at 684.

In *Zerbst v. Kidwell, supra,* the Supreme Court sustained the authority of the federal Board of Paroles to require a parolee, returned to prison because of his commission of a second crime, to complete his interrupted first sentence at the expiration of his second. Justice Black, who delivered the opinion of the Court said: "Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offense committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified." *Id.* at 363, 82 L. Ed. at 1401, 58 S.Ct. at 874.

Petitioner's contention, that the legislature has provided no standards to guide the Board of Paroles in determining whether a parole violator shall serve his original sentence concurrently with his new sentence or at the completion of it and that this failure nullifies the purported grant of authority, cannot be sustained.

G.S. 148-60 enumerates a number of factors to which the Board of Paroles shall give "due consideration" before it paroles a prisoner. In effect, however, the statute merely says that before the Board paroles a prisoner its members should feel that there is "a reasonable probability" that his release will not be "incompatible with the welfare of society." The legislature could have multiplied words but, in the end, it could have given the Board no more precise instructions with reference to parole. The same is true with reference to the exercise of its discretion in determining whether the sentence of a parole violator shall run concurrently or consecutively. It is implicit in the law that the Board's primary consideration shall be the "welfare of society."

The inherent conflict between the need to place discretion in capable persons and the requirement that discretion be in some manner directed cannot be satisfactorily resolved. No specifications can be written which will achieve the welfare of society, justice, rehabilitation, and similar goals. By what

standard does a judge determine a convicted defendant's sentence when the statute provides limits of "not less than five nor more than 60 years" (G.S. 14-19) or specifies "imprisonment in the court's discretion not to exceed 10 years"? In prescribing the punishment for crime the legislature has not attempted the impossible; it has eschewed guidelines and, of necessity, reposed confidence in the judge. Of necessity, it has done the same with reference to the Board of Paroles.

We hold that G.S. 148-62 does not violate the Constitution of North Carolina. The decision of the Court of Appeals is

Affirmed.