Cornelia **WEBSTER**, a minor by her mother and next friend, Gertie Webster, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

Alan R. **PERRY** as Chairman and Representative of the Board of Education of the Winston-Salem/Forsyth County School System and Marvin Ward as Superintendent of the Winston-Salem/Forsyth County School System, Defendants.

Civ. No. C–138–WS–72.

M. D. North Carolina,
Winston-Salem Division.

David **DUNLAP**, as next friend and father to Gloria Dunlap, et al., Plaintiffs,

v.

The **CHARLOTTE–MECKLENBURG BOARD OF EDUCATION** et al., Defendants.

Civ. No. 72–72.

W. D. North Carolina,
Charlotte Division.

United States District Court.

Argued June 22, 1973.

Decided Dec. 3, 1973.

Michael Sheely and Herman L. Stephens, Legal Aid Society of Forsyth

County, and Renn Drum, Drum & Liner, Winston-Salem, N. C., for plaintiffs, in Civ. No. C–138–WS–72.

W. F. Womble and John L. W. Garrou, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendants, in Civ. No. C–138–WS–72.

Shelley Blum, Legal Aid Society of Mecklenburg County, Charlotte, N. C., for plaintiffs, in Civ. No. 72–72.

William W. Sturges and John J. Doyle, Jr., Weinstein, Sturges, Odom & Bigger, P. A., Charlotte, N. C., for defendants, in Civ. No. 72–72.

Andrew A. Vanore, Jr., Deputy Atty. Gen. of N. C., for defendant Phillips.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and McMILLAN, District Judge.

## MEMORANDUM OF DECISION FOR THREE–JUDGE COURT

CRAVEN, Circuit Judge:

These actions, Webster v. Perry, in the Middle District of North Carolina, and Dunlap v. Charlotte-Mecklenburg Board of Education, in the Western District of North Carolina, were brought by the parents and next friends of the plaintiffs, students in the North Carolina public schools who were expelled, the school authorities insist, for disciplinary reasons. N.C.Gen.Stat. § 115–147 (Supp.1971), which authorizes disciplinary expulsions, is challenged in these actions as unconstitutional. The plaintiffs urge that N.C.Gen.Stat. § 115–147 is vague and overbroad, that it classifies some as ineligible for public education without either a compelling state interest or a rational purpose, and that school officials apply the statute discriminatorily on the basis of race. Additionally, the plaintiffs in *Webster* maintain that Section 115–147 violates due process in failing to provide procedural safeguards. Relief is sought pursuant to 42 U.S.C. § 1983 with jurisdiction founded under 28 U.S.C. § 1343. Pursuant to the requirements of 28 U.S.C. §§ 2281 and 2284, a three-judge district court was convened in each case. The cases have been con-

solidated to determine the constitutionality of Section 115–147.

■ We view the challenge to Section 115–147 on the grounds that it is applied discriminatorily and without procedural due process as an attack on lawless exercise of authority in particular cases and not an attack upon the statute conferring the authority. Accordingly, these issues are appropriate for determination by a single district judge, and we decline to adjudicate them. As to the other issues which do require the convening of a three-judge court, we think a decision under state law may obviate the necessity of a federal constitutional determination. The state law is unclear, and federal adjudication under the court's pendent jurisdiction would thrust us into a sensitive area of state administration and require interpretation of state law, which we cannot authoritatively and finally make. Accordingly, we abstain from determining the constitutional claims. Since the state law claims are wholly separate and distinct from the federal constitutional claims, we retain jurisdiction rather than dismiss.

## I.

■ In Givens v. Poe, 346 F.Supp. 202 (W.D.N.C.1972), the procedures used by school officials in the Charlotte-Mecklenburg system to suspend or dismiss students under the authority of Section 115–147 were challenged as violative of due process. In Givens the single district judge required school officials to comply with certain procedural requirements, but did not deal with the constitutionality of Section 115–147. The Charlotte-Mecklenburg school officials have complied with Givens, and there is thus no procedural due process question presented in Dunlap. The complaint in Webster, however, alleges that expelled students are deprived of procedural due process. As evinced by Givens, it is possible to correct any infirmity in the procedures followed under Section 115–147 by enjoining school officials without holding the statute unconstitutional.

Accordingly, the procedural due process issue is an inappropriate one for resolution by a three-judge court. C. Wright, Law of Federal Courts § 50, at 190 (2d ed. 1970).

■ In both Dunlap and Webster Section 115–147 is attacked as violative of equal protection, allegedly because school officials apply the section discriminatorily on the basis of race. We view this as "a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute . . . ." Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940). "[A]n attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority . . . ." Phillips v. United States, 312 U.S. 246, 252, 61 S.Ct. 480, 484, 85 L.Ed. 800 (1941). Thus this issue is likewise an inappropriate one for resolution by a three-judge district court.

Our judgment will remand both of these issues to a single district judge within the respective districts. See Board of Public Instruction v. Banks, 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971), vacating & remanding 314 F.Supp. 285 (S.D.Fla.1970) (three-judge district court).

## II.

■ The allegations in Dunlap and Webster, that Section 115–147 is unconstitutional because of vagueness and overbreadth and because it operates to classify some students as uneducable without either a compelling state interest or a rational basis, are on a different footing. These allegations attack the basic constitutionality of Section 115–147 and raise issues normally appropriate for determination by a three-judge district court.

While only the Dunlap complaint alleges a pendent state cause of action, it appears clearly that the plaintiffs in each case have both a substantial statutory and constitutional claim under

North Carolina law. N.C.Gen.Stat. § 115–1 (Supp.1971) provides in part:

> A general and uniform system of free public schools shall be provided throughout the State, wherein equal opportunities shall be provided for *all* students, in accordance with the provisions of Article IX of the Constitution of North Carolina. Tuition shall be free of charge to all children of the State . . . . [Emphasis added.]

N.C.Const. art. I, § 15 (1971), provides: "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C.Const. art. IX, § 2(1), provides:

> The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for *all* students. [Emphasis added.]

The North Carolina Supreme Court has stated:

> This constitutional mandate contemplates that the system of public schools which it is the duty of the General Assembly to provide for *all the children of the state* shall be a state system, to the end that *every child* in the state between the ages of six and twenty-one years, . . . shall have an opportunity, at least to attend a school in which standards set up by the state are maintained.

Marshburn v. Brown, 210 N.C. 331, 186 S.E. 265, 269 (1936). (Emphasis added.) *See also* Bridges v. City of Charlotte, 221 N.C. 472, 20 S.E.2d 825, 832 (1942). In Coggins v. Board of Educ., 223 N.C. 763, 28 S.E.2d 527 (1944), the court upheld rule-making power of school officials to maintain good order and discipline. However, the court was careful to point out that the rules upheld made "no attempt to deny plaintiff any instruction afforded by class work or by the required curriculum of the school." 28 S.E.2d at 531.

 The North Carolina Supreme Court has never been given an opportunity to construe Section 115–147 to limit the allegedly vague and overbroad language or to determine its validity under North Carolina statutory and constitutional law. If the plaintiffs are first required to pursue their state claim in state courts, North Carolina law provides a forum in which the plaintiffs may proceed. Jernigan v. State, 279 N.C. 556, 184 S.E.2d 259, 263 (1971)[1] Under these circumstances, where the plaintiffs have a state law claim and a state forum in which to present that claim, the state law is unclear, a decision under state law might obviate the necessity of a federal constitutional determination, and a federal adjudication would thrust the federal courts into a sensitive area of state administration, the federal courts should abstain. Reid v. Board of Educ., 453 F.2d 238, 240 (2d Cir. 1971) (failure to provide special classes for all eligible children).

---

1. N.C.G.S. § 143–309 provides:

 Failure to file [a petition for judicial review of an administrative decision] . . . within the time stated [30 days] shall operate as a waiver of the right . . . to review under this chapter, except that for good cause shown, the judge of the superior court [of Wake County] may issue an order permitting a review of the administrative decision under this chapter notwithstanding such waiver.

 Even if plaintiffs are held to have waived their right to review under § 143–309, they are certainly not foreclosed from seeking a declaratory judgment under N.C.G.S. § 1–253 through § 1–267. N.C.G.S. § 1–254 states that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, and other legal relations thereunder." As is clear from *Jernigan*, a statute can be declared unconstitutional and its enforcement enjoined "in a properly constituted action under the Declaratory Judgment Act when a specific provision of a statute is challenged by a person directly and adversely affected thereby." 279 N.C. at 562, 184 S.E.2d at 264.

Abstention is a "judge-made doctrine . . . first fashioned in 1941 in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971], [that] sanctions . . . escape [from immediate decision] only in narrowly limited 'special circumstances,' *Propper v. Clark*, 337 U.S. 472, 492 [69 S.Ct. 1333, 1344, 93 L.Ed. 1480]," *Zwickler v. Koota*, 389 U.S. 241, 248 [88 S.Ct. 391, 395, 19 L.Ed.2d 444] (1967), justifying "the delay and expense to which application of the abstention doctrine inevitably gives rise." *England v. Medical Examiners*, 375 U.S. 411, 418 [84 S.Ct. 461, 466, 11 L.Ed.2d 440] (1964).

Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). Abstention is inappropriate where it is "ordered simply to give state courts the first opportunity to vindicate the federal claim." Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967). In the present case, abstention would not have such a result. Abstention would merely require the parties to first pursue a *state claim* in the state courts, resolution of which may obviate the need to determine the fourteenth amendment question.[2] Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). "The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question . . . .'" Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972). Vagueness and overbreadth in Section 115–147, if any, is clearly susceptible to a limiting construction that would avoid or modify any constitutional question.

▮▮▮ Abstention is also clearly proper as to the contention that Section 115–147 has the effect of classifying some children as uneducable in violation of the fourteenth amendment. Under the North Carolina Constitution and the implementing statute, students expelled pursuant to the authority of Section 115–147 may be entitled to either reinstatement or to equivalent free educational opportunities in a more suitable environment. N.C.Const. art. IX, § 2(1). Thus Reetz v. Bozanich, 397 U. S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), is controlling:

> The *Pullman* doctrine was based on "the avoidance of needless friction" between federal pronouncements and state policies. 312 U.S., at 500, [61 S. Ct. at 645]. The instant case is the classic case in that tradition, for here the nub of the whole controversy may be the state constitution.

397 U.S. at 87, 90 S.Ct. at 790.

Since here the state claims are grounded upon state constitutional rights which are not merely counterparts for the federal rights asserted, we follow the "better practice" and "retain jurisdiction pending the proceedings in the state courts." American Trial Lawyers Assoc. v. New Jersey Supreme Court, 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651 (1973). *See* Reid v. Board of Educ., 453 F.2d 238, 244 (2d Cir. 1971).

Accordingly, as to the issues involved in Part I, the three-judge court will be dissolved, and as to the issues presented in Part II, we abstain, but will retain jurisdiction.

2. Under the procedure outlined in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiffs may assure that their federal contentions are heard by a federal court by exposing them only as a matter of information and noting on the state court record that they intend to return to the federal district court for disposition of their federal questions. 375 U.S. at 421–422, 84 S.Ct. 461. *See* C. Wright, Law of Federal Courts § 52, at 199 (2d ed. 1970). Although the *England* procedure may in some cases place state courts in the situation of issuing a mere advisory opinion, we do not perceive that to be the case here because of the substantial and distinct nature of plaintiffs' statutory and constitutional claims under state law. *See* discussion *supra* at p. 668.

McMILLAN, District Judge (concurring in part and dissenting in part):

The majority decision, in part, remands these cases to single district judges for determination of any procedural due process questions remaining in Webster v. Perry, and for determination of the challenge made in both *Perry* and *Dunlap* to alleged racially discriminatory *application* of North Carolina General Statutes § 115–147. In those judgments I concur.

The majority decision also retains jurisdiction over, but refrains from deciding, the questions, squarely presented to this three-judge court, whether N.C.G.S. § 115–147 violates the United States Constitution because (a) it is vague and overbroad, failing to give fair notice of its requirements to reasonable men, and (b) it denies equal protection of laws by classifying some students as not being entitled to public education, without either a compelling state interest or a rational basis. The majority recognizes these serious issues as "normally appropriate for determination by a three-judge district court." However, they abstain from decision of the federal constitutional claims pending an assumed decision of the state constitutional issues, in a state court action which does not exist, and on which time for filing suit as of right may have long since expired.

When the cases were argued, I had not fully considered the evidence and had no strong views about what our decision should be. Decision on the merits will not be easy; the issues are complex and precedent scarce; and the temptation to postpone is strong. However, after prolonged review of the facts and the relevant statutes, and with all due regard and respect for the considerations so well expressed in the majority opinion, I have come to the view that in spite of the difficulties, this court should face the federal constitutional issues and decide them on their merits rather than postpone them under the aegis of abstention.

I therefore respectfully dissent from this court's decision not to decide the constitutionality of the challenged statutes.

All of the plaintiffs are indigents.

All of the plaintiffs are black.

All of the plaintiffs got in trouble at school and have "lost out" of the conventional public education process and have been effectively excluded from it.

All of the plaintiffs are labeled as problem children, on their way to becoming problem adults; they are obviously in need of all the improvement the state can give them, *and the state needs for them to have it.* Public education may be the last chance for society to aid them effectively.

So few whites have been similarly excluded from school during the relevant period that a strong inference arises that the exclusion statute has been used and may be used discriminatorily against black students.

No state suit to challenge the expulsions and thus to test the relevant state constitutional issues is pending.

No such challenge *can* be made in North Carolina, by any child, except by filing a special petition in the Superior Court of Wake County in Raleigh. That court is one hundred and forty miles from Charlotte, over one hundred miles from Winston-Salem, and three hundred and fifty miles or so from the western end of North Carolina.

No such petition can be filed, even in Wake County, after the expiration of thirty days from notice of the challenged school board decision, except for "good cause" shown and in the discretion of a Superior Court judge, under North Carolina General Statutes § 143–309.

To abstain, then, is to defer to a theory rather than to an alternative right; these plaintiffs may have no *right* to require the state courts even to *consider* their plea.

Abstention, however rationalized, is a withholding or postponement of the pow-

er and duty of a court to do justice. In practice it has often resulted in the delay or denial of constitutional rights of the unpopular or the minority. It was conceived in Railroad Comm. v. Pullman Co., 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941) to avoid deciding a "substantial constitutional issue," raised by a complaint which

> " . . . touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

The "sensitive area of social policy" was race—racial discrimination in employment of Pullman porters and conductors. There have, of course, been a number of later abstentions, including, for example, abstention from decision of problems, *sui generis,* arising out of game inspection procedures in Alaska (Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L. Ed.2d 68 (1970)) and problems of sanitation on the Great Lakes (Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)). However sensitive, racial discrimination in state public schools (Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954)), or public employment is not today judicially off-limits; the cases before us include specific allegations and evidence of racial discrimination in the application of the statute. As one of the single judges who will have to pass on those issues of discrimination, I for one would welcome the previous attention of this court to the underlying issue of the constitutionality of the statute itself which this suit squarely raises.

Moreover, the majority opinion in this context extends and enlarges the abstention doctrine; trial courts should not take such a pioneer role in expanding that theory.

Avoiding unnecessary friction with state courts is a pleasant ideal; however, since there is no state court suit pending, there is no state court friction to avoid; the only friction thus far generated is between plaintiffs, who seek alleged constitutional rights, and defendants, who are charged with denying them. I would not seek the illusory Nirvana of friction-free judging at the cost of denial or even delay of constitutional right.

Chief Justice Burger, dissenting in Hughes Tool Co. v. TWA, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), rehearing denied, 410 U.S. 975, 93 S.Ct. 1434, 35 L.Ed.2d 707 (1973), pointed out vividly the costs and expenses to corporate interests caused by refusal to decide issues squarely presented. Unlike *Hughes Tool Co.,* this case does not involve a contest over $137 million, nor $7½ million in attorneys' fees; but in relation to the lives and fortunes of plaintiffs and of the defending school administrators, it may well be more important than the Hughes money is to Hughes.

Moreover, abstention pending possible litigation in state courts creates some pitfalls, not very well known nor well marked, for the plaintiffs. If they do not assert federal constitutional rights in the (presumed) state court suit, they materially weaken their chances of success there. On the other hand, if they do put their best foot forward and assert federal constitutional rights in the state courts, the decision of the state courts on those federal rights will apparently be *res judicata* in this court, England v. Louisiana, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Roy v. Jones, 484 F.2d 96 (3rd Cir. 1973); and the only remaining chance of a thorough review by a federal court of these federal claims would be in the unlikely event that the Supreme Court accepts jurisdiction on appeal or certiorari from the state court *and* conducts a full hearing and decides the issues on their merits. Litigants should not be thus forced, at their peril, to make such an unnecessary election with respect to rights

guaranteed by the United States Constitution.

It is time to re-invigorate John Marshall's credo, veneered by time, "abstention," "pragmatism," "standing" and "thicketeering," but still viable, that:

"It is most true, that this court will not take jurisdiction if it should not; *but it is equally true, that it must take jurisdiction, if it should.* The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. *We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.* The one or the other would be treason to the constitution." Cohens v. Virginia, 19 U. S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). (Emphasis added.)

The hard issue was put by Professor Herbert Wechsler this way:

"[T]he only proper judgment that may lead to an abstention from decision is that the Constitution has committed the determination of the issue to another agency of government than the courts. Difficult as it may be to make that judgment wisely, whatever factors may be rightly weighed in situations where the answer is not clear, what is involved is in itself an act of constitutional interpretation, to be made and judged by standards that should govern the interpretive process generally. That, I submit is *toto caelo* different from a broad discretion to abstain or intervene." Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harvard Law Review 1, 9 (1959).

With all due courtesy to the theories advanced to support the abstention doctrine, I do not believe those theories should be applied to these hard facts; I would decide the case on its merits.