512 F.2d 612
 Cornelia WEBSTER, a minor by her mother and next friend,
Gertie Webster, etc.,
and Rocky Lugo, etc., Plaintiffs, Vicki Lynn Horton,
Individually and on behalf of all others similarly
situated, et al., Appellants.
v.
Alan R. PERRY as Chairman and representative of the Board of
Education of the Winston-Salem/Forsyth County
School System, et al., Appellees.
 Nos. 74-1161, 74-1995.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 6, 1975.
Decided March 17, 1975.
 
 Michael Sheely, Winston-Salem, N.C. (Shelley, Blum & Sheely, Donald S. Gillespie, Jr., Terrence Roche, Legal Aid Society of Mecklenburg County, Charlotte, N. C., Herman Stephens, Legal Aid Society of Forsyth County, Renn Drum, Drum & Liner, Winston-Salem, N. C., on brief), for appellants in Nos. 74-1161 and 74-1995.
 John J. Doyle, Jr., Charlotte, N. C. (William W. Sturges, Weinstein, Sturges, Odom, Bigger & Jonas, Charlotte, N. C., and Andrew A. Vanore, Jr., Deputy Atty. Gen., U. S. Dept. of Justice, on brief), for appellees The Charlotte-Mecklenburg Board of Education, et al., and A. Craig Phillips in Nos. 74-1161 and 74-1995.
 John L. W. Garrou, Winston-Salem, N. C. (W. F. Womble and Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellees Alan R. Perry and Marvin Ward in Nos. 74-1161 and 74-1995.
 Before BRYAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.
 PER CURIAM:
 
 
 1
 These are joint appeals in two consolidated public school cases from orders of the District Court[1] of December 6, 1973 and July 31, 1974.[2] The actions were brought by the parents and next friends on behalf of students who had been expelled from the Charlotte-Mecklenburg School System and the Winston-Salem/Forsyth County School System. These expulsions were effectuated by virtue of North Carolina General Statutes § 115-147 authorizing disciplinary sanctions for student misconduct. Plaintiffs insist that this enactment conflicts with the Equal Protection and Due Process Clauses of the fourteenth amendment. Relying upon 42 U.S.C. § 1983 they seek to have the Act declared as without even original validity and to enjoin its further utilization. With the integrity of a State law at stake a three-judge court was impanelled, 28 U.S.C. § 2281.
 
 The statute in dispute reads:
 
 2
 "s 115-147. Power to suspend or dismiss pupils.-
 
 
 3
 The principal of a school shall have authority to suspend or dismiss any pupil who wilfully and persistently violates the rules of the school or who may be guilty of immoral or disreputable conduct or who may be a menace to the school: Provided, any suspension or dismissal in excess of 10 school days and any suspension or dismissal denying a pupil the right to attend school during the last 10 school days of the school year shall be subject to the approval of the county or city superintendent: Provided further, any student who is suspended or dismissed more than once during the same school term shall be subject to permanent dismissal for the remainder of the school term at the discretion of the principal, with the approval of the superintendent. In the absence of an abuse of discretion, the decision of the principal, with the approval of the superintendent, shall be final. Every suspension or dismissal for cause shall be reported at once to the superintendent and to the attendance counselor, who shall investigate the cause and deal with the offender in accordance with rules governing the attendance of children in school. (1955, c. 1372, art. 17, s. 5; 1959, c. 573, s. 12; 1963, c. 1223, s. 5; 1965, c. 584, s. 14; 1971, c. 1158)."In its opinion the District Court encompasses the litigation and condenses its components in this paragraph:
 
 
 4
 "N.C.Gen.Stat. § 115-147 (Supp.1971), which authorizes disciplinary expulsions, is challenged in these actions as unconstitutional. The plaintiffs urge that N.C.Gen.Stat. § 115-147 is vague and overbroad, that it classifies some as ineligible for public education without either a compelling state interest or a rational purpose, and that school officials apply the statute discriminatorily on the basis of race. Additionally, the plaintiffs in (one suit) maintain that Section 115-147 violates due process in failing to provide procedural safeguards. Relief is sought pursuant to 42 U.S.C. § 1983 with jurisdiction founded under 28 U.S.C. § 1343." 367 F.Supp. 666, 667.
 
 
 5
 Actually, the District Court did not pass upon the merits of any of these assertions. After it had discerningly separated the several issues in the cause, the Court for reasons to be discussed in a moment refrained from decision of any of these assertions, invoking the doctrine of conditional abstention.
 
 
 6
 To start with, the challenge of procedural due process in a student's dismissal, and the accusation of unequal protection through racial discrimination, the Court held, were considerations referable to the statute's application and not to its constitutional vitality. Believing the resolution of these questions did not, under 28 U.S.C. § 2281, require a multijudge tribunal, the Court declined to pass upon them, dissolved the three-judge court as to them and remanded them for determination by a single District Judge wherever the dispute existed.
 
 
 7
 The District Court was correct, we think, in so treating the racial discrimination argument, but it mistakenly refused to pass judgment on the issue of procedural due process. This is the dictation of Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), which had not come down when the present case was before the District Court. The Supreme Court observed that since Ohio had extended to certain persons rights of public school education, just as North Carolina has done for years, the State could not rescind the grant because of student misconduct without "fundamentally fair procedures". It held, also, that the remedial suit was appropriate for a three-judge District Court.
 
 
 8
 Hence, if the due process issue is to be evaluated in this suit the District Court must be a multijudge tribunal, 28 U.S.C. § 2281. Resolution of this issue will be subjected, however, to the same restraint as is now about to be exercised in the decision of the remaining allegations of the plaintiffs which the District Court states to be:
 
 
 9
 "... that Section 115-147 is unconstitutional because of vagueness and overbreadth and because it operates to classify some students as uneducable without either a compelling state interest or a rational basis, ...." 367 F.Supp. 666, 668.
 
 
 10
 The Court believed that it should not undertake to test the North Carolina statute on the complainants' allegations until it had been construed by the State judiciary. The District Court quite logically reasoned:
 
 
 11
 "The North Carolina Supreme Court has never been given an opportunity to construe Section 115-147 to limit the allegedly vague and overbroad language or to determine its validity under North Carolina statutory and constitutional law. If the plaintiffs are first required to pursue their state claim in state courts, North Carolina law provides a forum in which the plaintiffs may proceed. Jernigan v. State, 279 N.C. 556, 184 S.E.2d 259, 263 (1971) (footnote omitted). Under these circumstances, where the plaintiffs have a state law claim and a state forum in which to present that claim, the state law is unclear, a decision under state law might obviate the necessity of a federal constitutional determination, and a federal adjudication would thrust the federal courts into a sensitive area of state administration, the federal courts should abstain. Reid v. Board of Educ., 453 F.2d 238, 240 (2d Cir.1971) (failure to provide special classes for all eligible children)."
 
 
 12
 Furthermore, the District Court felt assured that upon interpretation by the North Carolina courts the "vagueness and overbreadth in Section 115-147, if any" would be "clearly susceptible to a limiting construction that would avoid or modify any constitutional question". It was of opinion, too, that with like study the North Carolina Court would satisfyingly refute the plaintiffs' "contention that Section 115-147 has the effect of classifying some children as uneducable in violation of the fourteenth amendment".
 
 
 13
 This prescience sprang from the District Court's awareness of the provisions of the North Carolina Constitution, Articles I, § 15(1971) and IX, § 2(1), with the activating statutes including N.C.G.S. § 115-1 (Supp.1971).[3] These references embody mandates for the establishment of free public schools in NOrth Carolina, the untrammeled privilege of education for all students, and "the duty of the State to maintain and guard that right," while guaranteeing equal opportunities to all students.
 
 
 14
 The resolve of the District Court to abstain is the theorem of Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). It is exampled in Lake Carriers' Ass'n v. Mac Mullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972):
 
 
 15
 "... The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the (federal) constitutional question....' "
 
 
 16
 Of similar import is Gibson v. Berryhill, 411 U.S. 564, 574, 93 S.Ct. 1689, 1757, 36 L.Ed.2d 488 (1973).
 
 
 17
 Abstention is the quintessence of this appeal. Cautiously the District Court reserved jurisdiction of the suit while awaiting the outcome of the State proceedings. With the exception of its ruling in respect to the want of due process, in our judgment the schedule adopted by the District Court was eminently proper and sound.
 
 
 18
 By no means overlooking the trenchancy of Judge MacMillan's dissent, we accept the majority opinion-Craven, J., in Webster v. Perry, 367 F.Supp. 666 (1973)-as a comprehensive analysis of this litigation. It is marked by a careful choice of precedents, apt and pat.
 
 
 19
 MOdified, and as modified affirmed.
 
 
 
 [1]
 The first of these actions was commenced in the United States District Court for the Western District of North Carolina and the other was later filed in the Middle District of North Carolina. Moreover, a three-judge court waS convened on October 17, 1972 in the suit pending in the Western District. The two cases were consolidated, by agreement, for hearing before the three-judge court in the Western District on November 30, 1972. The present opinion will treat the litigation, except as otherwise noted, as a single action
 
 
 [2]
 The occasion for two orders is that an appeal was taken both to this court and to the Supreme Court from the order of December 6, 1973. On June 17, 1974 the Supreme Court vacated that order and remanded the cause to the District Court for the Western District of North Carolina to pass a "fresh judgment", from which an appeal could be taken to this court. The fresh judgment was passed July 31, 1974
 
 
 [3]
 More expansive was the legislation considered by the General Assembly of North Carolina during the pendency of the present suit but not effective until July 1, 1974, after the instant decision. The statute is entitled "An act to Establish Equal Education Opportunities in the Public Schools; and for Other Purposes," ch. 1293, Senate Bill 1238, 1973 Session (2nd Session 1974). In general it defines in greater detail the public policy of North Carolina as to public schools and, inter alia, confers upon a child a right of review of an action or omission by the State or local authorities in the matter of education