Robert J. BROWN, Owner of Southern Mansion Massage, et al., Plaintiffs,

v.

Anthony M. BRANNON, District Attorney For the Fourteenth Judicial District of North Carolina, et al., Defendants.

No. C–75–218–D.

United States District Court, M. D. North Carolina, Durham Division.

Findings of Fact, Conclusions of Law and Order filed July 18, 1975.

Memorandum and Supplemental Order filed July 28, 1975.

**134**

William H. Murdock, David Q. LaBarre, Durham, N.C., for plaintiffs.

Anthony M. Brannon, pro se.

Jon P. Kindice, W. I. Thornton, Jr., Marvin L. Davis, Robert D. Holleman, Durham, N.C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

HIRAM H. WARD, District Judge.

This matter came on for hearing on July 15, 1975, in Durham, North Carolina, on the plaintiffs' motion for a preliminary injunction restraining the defendants from enforcing two municipal ordinances of the Durham City Code relating to the prohibition of the massage of private parts for hire and the licensing of massage businesses and persons performing massages. The plaintiffs further seek declaratory relief against the operation of the ordinances as being violative of rights guaranteed under the First, Fourth, and Fourteenth Amendments. The defendants have responded with a motion to dismiss under Rule 12, Federal Rules of Civil Procedure.

Jurisdiction of this Court is based upon 42 U.S.C. § 1983, 28 U.S.C. § 1343(3, 4), and 28 U.S.C. § 2201.

For the reasons which follow, the plaintiffs' claim for injunctive and declaratory relief is denied.

### Findings of Fact

1. On May 19, 1975, the Durham City Council adopted an ordinance referred to as Section 13–31, Durham City Code, which prohibits the massage of private parts, as defined, for hire. On the same date, the Council adopted an ordinance referred to as Chapter 3, Article V, Durham City Code, which requires licensing and regulation of massage businesses and persons engaged in the business of massage. Section 13–31 was effective upon passage, and Chapter 3, Article V, was to be effective sixty days thereafter to allow time for compliance (See Appendix for ordinances).

2. The plaintiffs, Robert J. Brown, Thomas Page, Spence Shannon, Fred McGill, and James Hogge, are owners and operators of their respective massage parlor businesses located within the City of Durham, Durham County, North Carolina. The plaintiffs, Norma Jean Smith and Caroline Cooper, are masseuses who are employed in one of the massage parlors owned by other plaintiffs. Julie Barnes and Elaine Odgen were plaintiffs in this suit until July 15, 1975, when by agreement of the parties and with the consent of the Court, these individuals entered a notice of a voluntary dismissal under Rule 41(a)(1), Federal Rules of Civil Procedure.

3. Julie Barnes and Elaine Odgen have been charged with a violation of Section 13–31 of the Durham City Code (See Appendix) and have criminal cases pending in the North Carolina General Court of Justice, Durham, North Carolina, having allegedly engaged in the massage of the private parts of another for hire.

4. Some or all of the plaintiffs' establishments have been operating in the City of Durham on or after early 1971.

5. Counsel for the parties frankly and candidly admit to the Court that four separate criminal prosecutions are now pending in the North Carolina General Court of Justice, Durham, North Carolina. Each of the four defendants is charged with violating Section 13–31.

6. The defendants, Anthony M. Brannon, District Attorney for the 14th Judicial District of North Carolina; Jon P. Kindice, Chief of Police of the City of Durham; and Marvin L. Davis, Sheriff of Durham County, are all duly elected and appointed officials whose jurisdiction embraces the Durham municipality and who stand ready to enforce the requirements of Chapter 3, Article V, when that ordinance becomes effective on July 19, 1975.

### Discussion

This case presents a touchy situation in which it will be impossible not to rub one of the parties the wrong way. The issue is whether Section 13–31 and Chapter 3, Article V, of the Durham City Code, violate Due Process and the Right to Privacy inherent to the First, Fourth, and Fourteenth Amendments to the Constitution of the United States. Since the ordinances require the application of different principles of constitutional construction, each will be dealt with separately.

### I. *Section 13–31, Durham City Code.*

The plaintiffs raise a number of alleged constitutional infirmities in Section 13–31 which prohibits the massage of private parts for hire. These claims include violations of Equal Protection through under-inclusivity and Due Process through pre-emption of the legislative field by the State of North Carolina.

In 1971, the Supreme Court handed down the landmark decision of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. That case considered the propriety of federal court intervention in pending state criminal prosecutions. The vital concern to which *Younger* addressed itself was the notion of comity and federalism or a proper respect for the state court's ability to recognize and interpret the Constitution when claims of such magnitude are raised in relation to the operation of state activities. The concept expressed was that the nation, as a whole, would fare best if states and their institutions were left free to perform their separate functions in their separate ways.

Abstention in pending criminal cases was limited only in the case where the movant could show that injury was great and immediate and in extraordinary situations where the prosecution was conducted in bad faith or with an intent to harass. *See Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

The plaintiffs, in brief and oral argument, concede that *Younger* is dispositive of their claim in this Court concerning the constitutionality of Section 13–31 since state criminal prosecutions are pending unless the exception noted above applies to their case. The only evidence presented on this point is that four persons have been arrested, and they face the unappealing prospect of being defendants in a criminal lawsuit.

It was noted in *Younger* that the exception of great and immediate injury would not be satisfied simply by showing the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution which was brought lawfully and in good faith. The plaintiffs have not shown any great and immediate injury which would justify fed-

eral injunctive intervention in the pending state criminal proceedings.

■ While these standards governing federal interference were largely shaped in the context of prayers for federal injunctions of state proceedings, it is clear that with respect to pending prosecutions the same standards apply to interference in the form of declaratory relief which is also sought by the plaintiffs. *See Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Huffman v. Pursue, LTD*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

There is, of course, no question that Section 13–31 is an ordinance, the violation of which is a misdemeanor, and thus the ordinance is criminal in nature, subjecting the violator to possible fine and imprisonment. N.C.G.S. § 14–4. This is a case presenting the classical factual predicate for application of the *Younger* abstention principle.

■ Although there is no question that the Equal Protection Clause of *both* the United States and the North Carolina Constitutions imposes upon lawmaking bodies the requirement that legislative classifications be based on differences that are reasonably related to the purposes of the act in which such are found and are not purely arbitrary, *State v. Greenwood*, 280 N.C. 651, 187 S.E.2d 8 (1972); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L. Ed.2d 393 (1961), principles of comity and federalism require that the federal court stay its equitable hand and allow the state courts to construe the local ordinance in light of the appropriate constitutional standards. Accordingly, the plaintiffs' claim for declaratory and injunctive relief as to Section 13–31, Durham City Code, is denied.

II. *Chapter 3, Article V, Durham City Code.*

The ordinance licensing and regulating massage businesses was passed by the Durham City Council on May 19, 1975, to become effective July 19, 1975. While the ordinance is regulatory in nature, violations of the ordinance subject the offender to possible fine and imprisonment under the provisions of N.C.G.S. § 14–4.

Until recently, some reasonable doubt existed as to the limits of the *Younger* abstention doctrine in the marginal area where a law evidences both a criminal and civil aspect. However, in *Huffman v. Pursue, LTD, supra,* the Supreme Court clarified the issue by stating that whenever a state is a party to a proceeding, which is both in aid of and closely related to criminal statutes, the state's interest is every bit as likely to be as great as it would be if the proceeding were strictly criminal in nature. The underlying principle is that the state's efforts to protect its interest in effectively fulfilling the police powers entrusted to it by the Tenth Amendment should not be frustrated except under unique circumstances.

Consequently, federal abstention would be mandated on the claims of the plaintiffs arising under the licensing ordinance except for the fact that there are no pending prosecutions under the ordinance. This is because the effective date of the ordinance is prospective to the filing of this suit.

Prosecution under Chapter 3, Article V, is certainly threatened as of July 19, 1975, when the provisions become effective. This factual background presents another previously murky area of constitutional construction which has been recently clarified by Supreme Court decision. In *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the plaintiff instituted an action in federal court seeking a declaratory judgment that the Georgia criminal trespass statute was being applied in violation of the plaintiff's First and Fourteenth Amendment rights and also seeking an injunction restraining certain county officials and the owner and manager of a certain shopping center from interfering with the plaintiff's right to distribute handbills at the shopping cen-

ter. The plaintiff was threatened with police arrest.

Addressing the claim of the lack of an actual case or controversy presented by the defendants in *Steffel*, the Supreme Court stated that Congressional intent behind the Declaratory Judgment Act of 1934 makes it apparent that the act was passed so that persons threatened with state criminal prosecutions could choose to forego the offending conduct and instead seek a federal declaration of their rights.

The same claim of lack of an actual case or controversy is made by the defendants in this case. However, this argument will not stand under the weight of *Steffel*, and there is no difficulty in concluding that this case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Steffel v. Thompson*, 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L. Ed.2d 505, 515 (1974), quoting from *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

The Supreme Court next considered whether *Younger* required exceptional circumstances to justify federal declaratory relief against state criminal statutes when a prosecution was not pending, but when such was threatened. It was decided that the principles of equity, comity, and federalism have little force in the absence of a pending state proceeding. Federal intervention at a time when no state court proceeding is pending does not result in duplicative legal proceedings or disruption of the state criminal justice system, nor can intervention be regarded as reflecting negatively upon the state court's ability to enforce constitutional principles. An apt analogy was made to placing "the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel, supra,* 415 U.S. at 462, 94 S.Ct. at 1217.

In the present case, the plaintiffs raise two claims as to the constitutionality of the licensing ordinance. Under the principles of *Steffel* it is incumbent upon this Court to review these claims brought in good faith and pass upon the merits since state prosecution is threatened, but is not pending.

The first claim of the plaintiffs is that Chapter 3, Article V, violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that the ordinance is pre-empted by and inconsistent with the North Carolina General Statutes § 14–177 through § 14–202.1 (Offenses Against Public Morality and Decency).

It is an anomaly that the plaintiffs should raise the issue that a local ordinance is inconsistent with and preempted by a state statute in a federal court. Such a claim could only be heard under the ancillary jurisdiction of the federal court since no federal question is presented by the claim. The North Carolina Supreme Court is the logical and sensible forum in which to assert state statutory pre-emption which would void conflicting local ordinances. Such cause of action is provided for in N.C.G.S. § 160A–174 (See Appendix).

Furthermore, it is quite obvious that the North Carolina Supreme Court has not been given an opportunity to determine if the ordinance is pre-empted by the state statutory scheme. As stated by the Fourth Circuit in *Webster et al. v. Perry et al.*, 512 F.2d 612 (1975), quoting Judge Gordon in a case involving abstention, "If the plaintiffs are first required to pursue their state claim in state courts, North Carolina law provides a forum in which the plaintiffs may proceed. (cite omitted). Under these circumstances, where the plaintiffs have a state law claim and a state forum in which to present that claim, the state law is unclear, a decision under state law might obviate the necessity of a federal constitutional determination, and a

federal adjudication would thrust the federal courts into a sensitive area of state administration, the federal courts should abstain." *Webster v. Perry, supra,* page 614.

■ A determination of the singularly state-oriented claim of statutory pre-emption is not the proper grist for the federal mill. In the absence of any showing that the obvious method, detailed in N.C.G.S. § 160A–174, for testing pre-emption and securing a definitive ruling in the state courts cannot be pursued with full protection to the plaintiffs' claim, the federal court will stay its hand and, therefore, pendent jurisdiction is refused. *See Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940).

The second and final claim raised by the plaintiffs to the licensing ordinance is that it violates and infringes upon the plaintiffs' right of privacy inherent to the First and Fourteenth Amendments by compelling the applicant for a license as a 'massagist' to submit to finger-printing by the local police, by requiring submission of photographs and by requiring applicants to have a medical examination and submit a certificate, and by requiring submission to a physical examination by a licensed physician when the Durham City Council has reason to believe that the applicant has contracted a communicable disease. The plaintiffs also claim their right to privacy is violated by imposition of criminal penalties on heterosexual relations between consenting adults when performed within the privacy and seclusion of a massage establishment.

Counsel for the plaintiffs frankly admitted at the hearing on July 15, 1975, that they could not cite any cases which extended the right of privacy to cover persons engaged in a public commercial enterprise such as is being conducted here. And the Court frankly admitted to the plaintiffs that its research had not revealed any such case, either. After this exchange, the plaintiffs' counsel informed the Court that they felt that logical extension of *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), would bring the plaintiffs' asserted rights under the umbrella of the privacy doctrine.

A detailed discussion of the above-cited cases would serve no useful purpose since none can be said to stand for the proposition for which the plaintiffs are contending. The breadth of the right of privacy is discussed in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, *reh. denied,* 414 U.S. 881, 94 S.Ct. 27, 38 L.Ed.2d 128 (1973), where the Supreme Court, Chief Justice Burger writing for the majority, said,

"Our prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included 'only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" '. [citations omitted] This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing." *Id,* at 65, 93 S.Ct. at 2639.

Such interests have no nexus with the protection sought by the plaintiffs in this case. Requiring fingerprinting, photographs, and medical examinations for persons engaged in a business which exposes the applicants to physical contact with the paying public is constitutional if rationally related to valid state interests. The requirement is not that the public register before receiving a massage, which was found to be an infringement on personal privacy by Judge Dupree in *Fehlhaber v. Thompson,* Civil No. 1031 (E.D.N.C. filed Sept. 10, 1974), but rather that the 'massagist' register and be licensed to practice.

In the legitimate operation of a massage parlor, the licensing provisions are certainly reasonable and rational. The photographing and fingerprinting obviously serve to aid police and administrative personnel in identifying and investigating potential applicants for a license. Such investigation is made to assure the municipality to the extent possible that the applicant does not seek to operate a house of ill repute by hand. The records also would aid in the efforts of police to enforce the criminal statutes of North Carolina relating to offenses against public morality and decency. Such licensing may reasonably have the effect of protecting the general public from obtaining massages from persons who have communicable diseases, or who have a long history of sexual violations, or who is a minor.

The photographing of persons desiring certain rights properly regulated by the state is certainly not uncommon. Everyone who has a driver's license or has seen the cabbie's registration card on the dash can attest to this fact. Likewise, fingerprinting is a common experience for bonded personnel and military employees. Schoolteachers and food handlers must have periodic physical examinations in order to carry on their professions. The intimate physical contact of a 'massagist' with a customer provides a rational basis to support the ordinance requiring such procedures for the protection of society and for the protection of the massage business.

### Conclusions of Law

The Court cannot find any basis raised by the plaintiffs on which to order injunctive or declaratory relief. Consequently, the plaintiffs' motion for a preliminary injunction and declaratory relief is denied for the reasons stated herein.

In all equity and good conscience, however, the Court is of the opinion that the provisions of Section 3 of Chapter 3, Article V, should be stayed for an additional period of sixty days from the date this order is entered so that all persons affected will have an opportunity to comply with the licensing provisions of the Chapter. It is not felt that such a stay seriously departs from the City Council's original purpose in enacting Section 3 in view of the fact that good faith litigation concerning the ordinance has been conducted since shortly following its enactment.

### ORDER

Now, therefore, pursuant to the Findings of Fact and Conclusions of Law it is ordered that the plaintiffs are not entitled to the declaratory and injunctive relief requested and the same is denied. It is further ordered that the provisions of Section 3, Chapter 3, Article V, be, and the same are hereby stayed for a period of sixty (60) days from the date of entry of this order to give the affected persons time to comply with the licensing provisions of the ordinance. Thereafter, a judgment dismissing the action will be entered.

### APPENDIX

### AN ORDINANCE PROHIBITING THE MASSAGE OF PRIVATE PARTS, AS DEFINED FOR HIRE.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DURHAM:

Section 1. A new section, designated Section 13–31, is added at the end of Section 13 of the Durham City Code as follows:

"Section 13–31. Massage of Private Parts for Hire Prohibited.

It shall be unlawful for any person to massage or to offer to massage the private parts of another for hire. 'Massage' means the manipulation of body muscle or tissue by rubbing, stroking, kneading or tapping, by hand or mechanical device. 'Private Parts' means the penis, scrotum, mons veneris, vulva or vaginal area. The provisions of this ordinance shall not

apply to licensed medical practitioners, osteopaths or chiropractors, or persons operating at their directions, in connection with the practice of medicine, chiropractic, or osteopathy."

Sec. 2. All ordinances in conflict herewith are hereby repealed.

Sec. 3. This ordinance shall be in full force and effect from and after its passage.

## AN ORDINANCE LICENSING AND REGULATING MASSAGE BUSINESSES.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DURHAM:

Section 1. That Chapter 3 of the Durham City Code is hereby amended by adding thereto the following:

"ARTICLE V. MASSAGE PARLORS, HEALTH SALONS, AND RELATED BUSINESSES.

Section 3-20. To protect public health, safety, welfare and morals, the following privilege license provisions and regulations are ordained for the privilege of carrying on the business, trade, or profession of massagist and for the operation or carrying on of the businesses, trades, or professions commonly known as massage parlors, health salons, physical culture studios, or similar establishments wherein massage or physical manipulation of the human body is carried on or practiced. The provisions of this article shall not apply to a regularly established and licensed hospital, sanitarium, nursing home, nor to an office or clinic operated and regularly used by a duly qualified and licensed medical practitioner, osteopath, or chiropractor in connection with the practice of medicine, chiropractic, or osteopathy.

Sec. 3-21. Definitions.

Unless the context clearly indicates otherwise, the following words and phrases shall have the following meanings:

(1) 'Massage' means the manipulation of body muscle or tissue by rubbing, stroking, kneading, or tapping, by hand or mechanical device.

(2) 'Massage Business' means any establishment or business wherein massage is practiced, including establishments commonly known as health clubs, physical culture studios, and massage studios.

(3) 'Business or profession of massage' includes the massage or treatment of any person for a fee or in expectation of a gratuity from the person massaged.

(4) 'Massagist' means any person engaged in the business or profession of massage.

Sec. 3-22. Licensing of Massage Business Operators.

(a) No person, partnership, corporation, or association shall operate a massage business as herein defined unless such person, partnership, corporation or association shall have first applied for and received the privilege license provided by this section.

(b) Every application for the privilege license prescribed herein shall be upon a form approved by the City Manager and shall be filed with the City Clerk. Every such application shall be made under oath and shall contain the following information:

(1) If the applicant is a person, the name and residence address of such person. If the applicant is a partnership, corporation or association, the name and residence address of all persons having any legal or beneficial interest in such applicant; and

(2) The address of the premises where the massage business shall be located; and

(3) A complete statement of all convictions of any person whose name is required to be given in paragraph (b)(1) above for any felony, or prostitution or any violation of any law relative to prostitution; and

(4) A complete statement of any revocation, by any governmen-

tal unit, of any license to operate a massage business or to engage in the business or profession of massage held by any person whose name is required to be given in paragraph (b)(1) above; and

(5) A complete statement of any conviction of any person whose name is required to be given in paragraph (b)(1) above, for violation of any statute, law, ordinance or regulation of any government concerning the operation of a massage business or the business or profession of massage; and

(6) The name and address of any massage business or other establishment owned or operated by any person whose name is required to be given in paragraph (b)(1) above wherein the business or profession of massage is carried on; and

(7) A description of any other business to be operated on the same premises or on adjoining premises owned or controlled by the applicant.

(c) The City Clerk shall transmit a copy of the application to the Police Department for an investigative report; to the Inspections Division to determine compliance with all zoning and building regulations and ordinances; and to the Fire Department to determine compliance with any law relating to fire protection. The Police and Fire Departments and the Inspections Division shall, within a reasonable time, not to exceed forty-five (45) days, report the results of their examinations to the City Clerk.

(d) An application in proper form, accompanied by all reports required by this section, shall be submitted to the City Council, which shall approve such application if the City Council determines that:

(1) The application contains no misstatement of fact; and

(2) The applicant, or any person having any legal or beneficial ownership interest in the applicant, has not been convicted of any crime involving sexual misconduct, including but not limited to N.C.G.S. 14–177 through N.C.G.S. 14–202.1, Article 26 (offenses against public morality and decency) and N.C.G.S. 14–203 through 14–208, Article 27 (Prostitution), or of Section 13–31 of this Code, or of any Federal statute relating to prostitution, or of any violation of any law or ordinance of any governmental unit concerning or related to the business or profession of massage; and

(3) The applicant conforms to all requirements of applicable zoning, building, and fire prevention codes.

(4) The applicant or any person having a legal or beneficial ownership interest in the applicant has not, for the three year period preceding the application, had a previously issued license for engaging in the business or profession of massage revoked.

(e) Upon approval of the application by the City Council, and upon receipt of a One Hundred Dollar ($100.00) license fee, the Collector of Revenue shall issue a privilege license to applicant.

(f) A license issued pursuant to this section shall be revoked by action of the City Council if the City Council determines that:

(1) The licensee has violated any provision of this article; or

(2) The licensee, or any agent of the licensee, employs or permits to be on the premises of the ap-

plicant's massage business any person practicing the business or profession of massage who has not been issued the privilege license required by Section 3–23 hereof, or whose license under Section 3–23 has been revoked; or

(3) The licensee, or the legal or beneficial owner of any interest in the licensee is convicted of any crime involving sexual misconduct, including but not limited to G.S. 14–177 through N.C.G.S. 14–202.1, Article 26 (Offenses against public morality and decency) and N.C.G.S. 14–203, through N.C.G.S. 14–208, Article 27 (Prostitution), or

(4) Any employee of the licensee is convicted of any felony in connection with his or her employment, or is convicted of any crime involving sexual misconduct, including, but not limited to G.S. 14–177 through N.C.G.S. 14–202.1, Article 26 (Offenses against public morality and decency) and N.C.G.S. 14–203, through N.C.G.S. 14–208, Article 27 (Prostitution) or of Section 13–31 of this Code, or

(5) The licensee violates any zoning, building, or fire prevention ordinance.

(g) A license issued pursuant to this article is void if the licensee moves or ceases operating a massage parlor at the location required to be stated in the application for license pursuant to Section 3–22(b)(2).

Sec. 3–23.  Licensing of Massagists.

(a) No person shall engage in the business or profession of massage unless such person shall have first applied for and received the privilege license provided by this section.

(b) The application for the license required by this section shall be upon a form approved by the City Manager and shall be filed with the City Clerk.  Such application shall be given under oath and shall contain the following information:

(1) The name, age and residence address of the applicant;  and

(2) A complete statement of the previous business or occupation of the applicant for the two years immediately preceding the date of application, including any massage establishment experience;  and

(3) A complete statement of all convictions of the applicant for any felony or misdemeanor or violation of a local ordinance.

(4) A complete statement of any revocation of any license granted by any governmental unit to the applicant to engage in the business or profession of massage.

(5) The date and place of applicant's birth, the name of applicant's parents, and the residence address or addresses of the applicant for the five years immediately preceeding the date of application.

(c) The applicant shall submit, as part of the application required in subsection (b) hereof, the following:

(1) Fingerprints of the applicant taken by the Police Department;  and

(2) Two recent photographs of the applicant's head and shoulders, of a size and quality prescribed by the City Manager;  and

(3) A medical certificate signed by a physician, licensed to practice in North Carolina, within seven days of the date of the application.  The certificate shall state that the applicant was examined by the certifying physician and that the applicant is free of communicable disease.

The additional information required by this subsection shall

be provided at the applicant's expense.

(d) The City Clerk shall transmit a copy of the application to the Police Department for an investigative report. The Police Department shall, within a reasonable time, not to exceed forty-five (45) days, report the results of its investigation to the City Clerk.

(e) An application in proper form shall be submitted to the City Council together with all reports required by this section. The City Council shall approve such application if the Council determines:

(1) That the applicant is at least eighteen (18) years of age.

(2) The application contains no misstatement of fact; and

(3) The applicant has not been convicted of any crime involving sexual misconduct, including, but not limited to N.C.G.S. 14–177 through N.C.G.S. 14–202.1, Article 26 (offenses against public morality and decency) and N.C.G.S. 14–203 through 14–208, Article 27 (Prostitution), or of Section 13–31 of this Code, or of any Federal statute relating to prostitution, or for violation of any law or ordinance of any governmental unit concerning or related to the business or profession of massage; and

(4) The applicant has not, for the three year period preceding the application, had a previously issued license for engaging in the business or profession of massage revoked; and

(5) The applicant is free from communicable disease as evidenced by the medical certificate required herein; and

(6) The applicant has not been previously convicted of any violation of any provision of this article.

(f) Upon approval of the application by the City Council, and upon receipt of a Fifty Dollar ($50.00) license fee, the Collector of Revenue shall issue a privilege license to the applicant.

(g) The City Council shall have authority to direct that any person licensed under this section submit to a medical examination by a licensed physician approved by the City Council. This authority shall be exercised only when the Council has reason to believe that any such person has contracted a communicable disease. Refusal to submit to such examination shall be grounds for revocation of such license as provided in subsection (h) of this section. Notwithstanding the provisions of this subsection, every person licensed under this section shall file and continue to file with the City Clerk a new medical certificate with each application for renewal of the license prescribed by this section. Failure to file such updated certificates shall be grounds for revocation of such license as provided in subsection (h) of this section.

(h) A license issued pursuant to this section shall be revoked by action of the City Council if the City Council determines:

(1) The licensee has violated any provision of this article; or

(2) The licensee is afflicted with a communicable disease; or

(3) The licensee has failed to be examined by a licensed physician when required by the City Council pursuant to subsection (g) of this section, or has failed to file any medical certificate required by said subsection (g); or

(4) The licensee has been convicted of a felony, or any crime involving sexual misconduct, including, but not limited to N.C.G.S. 14–177 through N.C.G.S. 14–202.1, Article 26 (of-

fenses against public morality and decency) and N.C.G.S. 14–203 through 14–208, Article 27 (Prostitution), or of violating Section 13–31 of this Code, or under any Federal statute relating to prostitution, or for violation of any law or ordinance of any governmental unit related to the business or profession of massage.

### Sec. 3–24. Employer to Use Only Licensed Employees.

No person, corporation, partnership, or association licensed under Section 3–22 hereof shall allow or permit any person to massage or treat any person upon the premises operated by the licensee unless the person giving such massage or treatment has complied with all requirements of licensing under Section 3–23, including periodic medical examinations by a licensed physician. Violation of this section shall be grounds for revocation of the license issued to such violator pursuant to this article.

### Sec. 3–25. Posting of License.

(a) Every massagist shall post the license required by the article in his work area.

(b) Every person, corporation, partnership, or association licensed under Section 3–22 hereof shall display such license in a prominent place.

### Sec. 3–26. Notice and Hearing.

Before the City Council revokes a license issued pursuant to this article, or if the City Council determines reasonable grounds exist to deny an application for a license pursuant to this article, the City Council shall cause a written notice to be sent by certified mail to the licensee affected or applicant affected, at the address stated in the license or application. The notice shall advise the affected party of a right to appear before the City Council, with or without legal counsel, at a stated time and place, for the purpose of presenting any evidence relevant to such revocation or denial, and for the purpose of hearing all evidence submitted and examining or cross-examining any person providing such evidence.

### Sec. 3–27. Hours of Operation.

(a) No person licensed as a massagist under Section 3–23 hereof shall massage or treat any person, or engage in the business or profession of massage, before 8:00 A.M. or after 12:00 P.M., prevailing time.

(b) No person, corporation, partnership, or association licensed under Section 3–22 hereof shall admit customers or prospective customers, or remain open for business, or allow, permit or condone any massage or treatment of any person upon the premises before 8:00 A.M. or after 12:00 P.M., prevailing time.

(c) No person in charge of managing a massage business upon the premises shall allow, permit, or condone any massage or treatment of any person before 8:00 A.M. or after 12:00 P.M. prevailing time.

### Sec. 3–28. Patronage of Massage Businesses by Minors and Employment of Minors.

(a) No person licensed as a masseur or masseuse under Section 3–23 hereof shall massage or treat any person under the age of eighteen (18) upon the licensed premises, except upon written order by a licensed physician, osteopath, chiropractor, or registered physician therapist, such order being dated and in the possession of the masseur or masseuse giving the massage or treatment. A violation of this subsection shall be grounds for revocation of any license issued to such violator pursuant to this article.

(b) No person, corporation, partnership or association licensed under Sec-

tion 3–22 hereof shall allow, permit or condone the massage or treatment of any person under the age of eighteen (18) upon the licensed premises, except upon written order by a licensed physician, osteopath, chiropractor, or registered physical therapist, such order being dated, and a true copy of such order being in the possession of the licensee before administration of any massage or treatment. A violation of this subsection shall be grounds for revocation of any license issued to such violator pursuant to this article.

(c) No person, corporation, partnership or association licensed pursuant to Section 3–22 of this article shall employ any person under the age of eighteen (18) years in the operation of a massage business.

**Sec. 3–29. Privilege License Annual.**

The licenses required under this article are Annual Privilege Licenses. Such licenses shall be due and payable in the same manner as prescribed for other privilege licenses issued by the City of Durham pursuant to the License and Privilege Tax Ordinance of the City.

**Sec. 3–30. Penalties.**

Any person convicted of violating any provisions of this article shall be punished by fine or imprisoned as provided by N.C.G.S. 14–4.

**Sec. 3–31. Separability.**

If any section, subsection, sentence, clause, phrase or portion of this Article is for any reason held invalid or unconstitutional by any Court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions thereof.

Sec. 2. All ordinances in conflict herewith are hereby repealed.

Sec. 3. This ordinance shall be in full force and effect from and after its passage, provided, however, any person, partnership, corporation or association engaged in the operation of a massage business and every person engaged in the business or profession of massage, at the time of the enactment of this ordinance shall have sixty (60) days in which to comply with the licensing provisions of this ordinance.

ARTICLE 8.

*Delegation and Exercise of the General Police Power.*

§ *160A–174. General ordinance-making power.*—(a) A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances.

(b) A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:

(1) The ordinance infringes a liberty guaranteed to the people by the State or federal Constitution;

(2) The ordinance makes unlawful an act, omission or condition which is expressly made lawful by State or federal law;

(3) The ordinance makes lawful an act, omission, or condition which is expressly made unlawful by State or federal law;

(4) The ordinance purports to regulate a subject that cities are expressly forbidden to regulate by State or federal law;

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation.

(6) The elements of an offense defined by a city ordinance are identical to the elements of an offense defined by State or federal law.

The fact that a State or federal law, standing alone, makes a given act, omission, or condition unlawful shall not preclude city ordinances requiring a higher standard of conduct or condition. (1971, c. 698, s. 1.)

## MEMORANDUM AND SUPPLEMENTAL ORDER

On July 18, 1975, this Court entered Findings of Fact and Conclusions of Law and Order denying the plaintiffs' motions for injunctive and declaratory relief concerning the enforcement of two municipal ordinances relating to the prohibition of the massage of private parts for hire and the licensing of massage businesses and persons performing massage. Counsel for the parties filed extensive briefs, and the above-mentioned order was entered after hearing oral argument on July 15, 1975. There is no dispute as to any of the material facts.

The Court ruled upon the merits as to the claims presented challenging the constitutionality of the licensing provision of the Durham City Code, Chapter 3, Article V (See appendix to order of July 18, 1975), holding the ordinance did not violate the plaintiffs' right to privacy under the First and Fourteenth Amendments to the United States Constitution and further holding that the pre-emption question, i. e., the argument that the local ordinance is contradictory and pre-empted by state statutes, did not present a federal question and pendent jurisdiction was refused in light of policy considerations strongly favoring state adjudication of the alleged intrastate conflict of laws question.

As to the claims relating to the local ordinance of the Durham City Code, Section 13–31 (See appendix to order of July 18, 1975), prohibiting the massage of private parts for hire, the Court was informed by both parties of the pendency of criminal actions in Durham District Criminal Court against several persons who could and were questioning the constitutionality of Section 13–31 in the state court. Based upon principles of comity and federalism and a desire to avoid duplicitous and possibly contradictory results with the state court, and based upon what this Court considered to be a logical and reasonable extention of the principles set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), this Court abstained from deciding the claims raised by the plaintiffs as to the constitutionality of Section 13–31. This action was taken even though none of the *plaintiffs* seeking federal declaratory relief had criminal prosecutions pending against them individually.

Subsequently, on July 23, 1975, this Court received the slip opinion of the Supreme Court in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (Decided June 30, 1975), which limits the scope of the *Younger* abstention doctrine to situations in which the federal plaintiff seeking injunctive (and declaratory) relief is a defendant in a pending state criminal proceeding. The fact that state criminal proceedings involving the same statute are pending against other defendants is not grounds for federal abstention.

In *Doran*, three corporations filed a complaint in federal court seeking injunctive and declaratory relief against a law enforcement official, claiming a New York ordinance proscribing topless dancing violated the corporations' First and Fourteenth Amendment rights. One of the corporation's employees, at the direction of the corporation, openly violated the law, and criminal prosecution was pending in the state court against the corporation (M & L). The remaining two corporations (Salem and Tim-Rob) had voluntarily complied with the ordinance and initiated a federal action for relief, joining in a suit with M & L.

The district court addressed the appellants' *Younger* contention, but held that the pending prosecution against M & L did not affect the availability of injunctive relief to Salem and Tim-Rob. The district court concluded that if federal relief were granted to two of the corporations, it would be anomalous not to extend it to M & L as well. The Court of Appeals for the Second Circuit affirmed by a divided vote.

The Supreme Court, hearing the case on certiorari, stated:

> We do not agree with the Court of Appeals, therefore, that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes, and should thereby each be entitled to injunctive relief. We cannot accept that view, any more than we can accept petitioner's equally Procrustean view that because M & L would have been barred from injunctive relief had it been the sole plaintiff, Salem and Tim-Rob should likewise be barred not only from injunctive relief but from declaratory relief as well. While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them, this is not such a case—while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control and management. We thus think that each of the individual respondents should be placed in the position required by our cases as if that respondent stood alone.

*Doran v. Salem Inn, Inc., supra,* 95 S. Ct. at 2566.

The Supreme Court proceeded to hold that on the facts of *Doran,* the issuance of a preliminary injunction as to Salem

and Tim-Rob is not subject to the restrictions of *Younger* and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688 (1971). The Court stated that the principles of *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L. Ed.2d 505 (1974), would control, allowing those plaintiffs to maintain an action for relief based upon "threatened" prosecution.

Obedient to the teachings of the Supreme Court in *Doran,* and forsaking its original view deemed Procrustean, this Court, *sua sponte,* will reconsider the plaintiffs' motions for declaratory and injunctive relief as they relate to Section 13–31, Durham City Code.

The plaintiffs' first contention is that Section 13–31 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by virtue of its interference with the plaintiffs' alleged right to engage in a lawful business occupation absent evidence of a compelling state interest or a rational basis on which to deny the same.

The Durham City Council, in the exercise of its legislative function, has determined that it is not within the best interest of the public health or welfare to allow the massage of the private parts, as defined, for hire, or in other words, to operate a house of ill repute by hand. It is unquestionable that the basic motivation for such an ordinance is the desire to prohibit certain sexual practices performed for hire and deemed unacceptable in light of community standards of morality. Such legislation in the field of public morality and decency, for example, the laws prohibiting prostitution, has long been a part of every state's criminal code. The exercise of the police power for the general welfare of the public is a right reserved to the states by the Tenth Amendment to the Constitution.[1] The State of North

---

1. AMENDMENT X—RESERVED POWERS TO STATES
The powers not delegated to the United States by the Constitution, nor prohibited by

it to the States, are reserved to the States respectively, or to the people.

Carolina has delegated general ordinance making power to its municipalities so that they may prohibit acts deemed to be detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the municipality. N.C.G.S. § 160A–174 (See appendix to order of July 18, 1975). Section 13–31 is a legitimate and proper exercise of the police power, and this Court will not sit as a superlegislature, attempting to decide what is in the general welfare of the public. To do otherwise, when a statutory enactment does not offend the Constitution, would be to judicially usurp the legislative function.

The position was stated most appropriately in *Cianciolo v. Members of City Council of Knoxville, Tenn.*, 376 F.Supp. 719, 724 (E.D.Tenn.1974):

> Additionally, there is nothing to prevent the City from regulating the *particulars* of massage establishments through more specific and less blanket-type prohibitions under examination here. For, example, the City could prohibit the establishment, subject to licensing, from employing persons convicted of certain crimes; revoke a license of a licensee convicted of a crime involving sexual misbehavior; revoke a license of licensee whose employee was convicted of sexual misbehavior; regulate the hours during which a massage establishment could lawfully operate; prohibit the administering of massages in private areas, *prohibit the massaging of restricted areas of the body*; and subject massage parlors to inspection by the City. (Latter emphasis added).

The plaintiffs next claim that the ordinance violates the Equal Protection Clause in that it arbitrarily excludes licensed medical practitioners, osteopaths, and chiropractors, or persons operating at their direction, from coverage under the ordinance without being based upon any valid state interest or rational basis.

In *Cheek v. City of Charlotte*, 273 N. C. 293, 160 S.E.2d 18 (1968), a Char-

lotte massage ordinance excluded from its scope massages performed at YMCA's, YWCA's, and licensed barber and beauty shops while taking aim at massages performed in commercial parlors. The court struck down such exclusions as unreasonable and arbitrary. However, the exclusions in the instant case are a far cry from those stricken down in *Cheek* and cannot be said to be unreasonable or arbitrary.

Medical practitioners, osteopaths, and chiropractors are all professional persons who must be licensed and who are regulated under various provisions of the General Statutes of North Carolina. See N.C.G.S. §§ 90–6, 90–134, 90–145. Furthermore, these are professionals who offer medical services involving specialized knowledge and skill developed from years of intellectual training and are readily distinguishable from massagists whose skill involves physical and manual dexterity without intellectual skill or advanced knowledge. "An uneducated person can give a massage as well as an educated person." *Smith v. Keator*, 21 N.C.App. 102, 106, 203 S.E.2d 411, 415 (1974).

██ ██ Treatment of medical specialists in a different manner from massagists working for hire is rational and reasonable. The Durham City Council was wise in not enacting such a broad statute as would include medical practitioners and make unlawful a variety of medically necessary functions which could conceivably be denominated massage of private parts for hire, for example, hernia or gynecological examinations. Although massage may offer some health benefits (to which the tired tennis player will gladly attest), it is not a professional science of healing and may be regulated by local government, if done in a constitutionally permissible manner.

The plaintiffs' next claim of unconstitutionality is that Section 13–31 is preempted and inconsistent with state statutory law, specifically N.C.G.S. §§ 14–

177 through 14–202.1 (Offenses Against Public Morality and Decency). This identical claim was made with regard to the regulatory provisions of Chapter 3, Article V, Durham City Code. This is a pendent jurisdiction claim since no federal question is presented and the Court refuses to accept jurisdiction for the same reasons more fully set forth in its previous order of July 18, 1975.

Likewise, the plaintiffs' argument based upon right of privacy has been considered in detail in the Court's previous order and the conclusions reached are equally applicable to challenges made to the constitutional validity of Section 13–31.

One final matter needs attention with reference to the Court's order of July 18, 1975. The sixty-day stay entered in that order regarding the provisions of Section 3, Chapter 3, Article V, applies only to those affected persons who are included in the proviso of Section 3. Those persons presently in the massage business have sixty days from the date of the July 18, 1975, order to comply with the licensing provisions of Chapter 3, Article V, although that ordinance is now effective in all respects as to all others not already in business. The provisions of Chapter 3, Article V, are not to be stayed further after the Durham City Council takes appropriate action on any licensing application made and acted upon in accordance with the ordinance.

In other words, the stay ordered by the Court on July 18, 1975, was for the identical purposes originally set forth in Section 3, Chapter 3, Article V, by the Durham City Council.

Obviously, the stay of Section 3 does not mean city officials should not process applications and do all things necessary under the ordinance during the additional sixty-day period allowed by the Court to accept, process, and determine license applications.

For all of the above-mentioned reasons, it is concluded as a matter of law

that Section 13–31, Durham City Code, does not violate the Constitution of the United States and that the plaintiffs' claim for injunctive and declaratory relief is denied. A judgment will be entered accordingly.